OPTYL EYEWEAR FASHION INTERNATIONAL CORPORATION, a New York corporation, Plaintiff-Appellee,

v.

STYLE COMPANIES, LTD., a California corporation, Defendant,

Lewis Anten, a professional corporation, Appellant.

No. 84–5695.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1985.

Decided May 20, 1985.

---

Robert B. Jones, David A. Crossman, Fitch, Even, Tabin & Flannery, Chicago, Ill., Richard W. Dickerson, Lyon & Lyon, Los Angeles, Cal., for plaintiff-appellee.

Robert Ezra, Benbassat, Ezra, Arkin & Weissman, Los Angeles, Cal., for appellant.

Before SCHROEDER, FLETCHER, and FARRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Lewis Anten, attorney for Style Companies, Ltd. ("Style") appeals the district court's imposition of sanctions against him for his conduct in seeking disqualification of opposing counsel. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Appellee Optyl Eyewear Fashion International Corp. ("Optyl") brought suit against Style Companies, Ltd. ("Style") for trademark infringement and unfair competition. Optyl alleged that Style sold jackets bearing the trademark "Carrera," which is owned by Optyl.

In preparation for trial, Optyl sent letters to 1,100 of its customers in California, asking whether they had seen or purchased jackets bearing "Carrera" labels. The letters stated: "[o]ther companies are using the Carrera trademark and making millions of dollars at our expense." Optyl states that it sent out the letter to determine the level of actual confusion between its jackets and those sold by Style. Optyl contends the response to its mailing indicated an 85% degree of confusion.

After learning of the letter, Style filed an amended counterclaim for libel. Style then propounded interrogatories to Optyl, asking for the names of all persons who participated in preparing and sending the letters. Optyl responded that an executive vice-president of the company and Optyl's counsel had drafted the letter.

Style's counsel, Lewis Anten, then indicated by letter that he intended to call two of Optyl's attorneys, David Crossman and Robert Jones, as witnesses at trial. Anten requested that Optyl's lawyers voluntarily disqualify themselves and their firm from further representation of Optyl. When Optyl's attorneys refused, Anten filed a motion on behalf of Style to disqualify them.

Optyl answered Style's motion, and requested attorneys' fees and costs under 28 U.S.C. § 1927 (1982), for defending against a frivolous and vexatious motion. The district court denied the motion for disqualification and granted the request for fees. The court ordered Anten personally to pay all costs, expenses, and attorneys' fees incurred by Optyl in opposing the motion for disqualification.

Optyl's attorneys claimed they had expended over $10,000 in opposing the motion to disqualify. The district court awarded them a total of $7,000 in fees and costs.

■ After the court denied Anten's motion for reconsideration, Anten timely appealed.[1]

## II. DISCUSSION

### A. Standard of Review

■ The primary responsibility for controlling the conduct of attorneys rests with

---

**1.** As a preliminary matter, this court has jurisdiction over Anten's appeal under the collateral order doctrine. An order imposing a sanction upon counsel, a nonparty in the underlying action, is final and appealable by the person sanctioned, when the sanction is imposed. *Mesirow v. Pepperidge Farm, Inc.,* 703 F.2d 339, 345 (9th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983); *see also Cheng v. GAF Corp.,* 713 F.2d 886, 888–89 (2d Cir.1983).

the district court. Accordingly, we will not disturb an award of attorneys' fees absent an abuse of discretion. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984); *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 720 (9th Cir.1984); *Foster v. Tourtellotte*, 704 F.2d 1109, 1110 (9th Cir.1983).

### B. Award of Attorneys' Fees and Costs Under Section 1927

■ The district court awarded fees and costs against Anten pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This court has construed the phrase "unreasonably and vexatiously" to require a showing of intent, recklessness, or bad faith. *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982); *accord United States v. Austin*, 749 F.2d 1407, 1408 (9th Cir.1984); *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983). Based on the record before us, we are satisfied that Anten's disqualification motion was meritless, that it was

brought solely for tactical reasons, and that it was brought in bad faith.

### C. The Merits of the Disqualification Motion [2]

■ The standards for disqualification of an attorney who may be a witness at trial derive from the applicable disciplinary rules,[3] and the principal considerations under those rules are (1) whether an attorney *ought* to be called to testify on behalf of his client, Model Code of Professional Responsibility DR 5–102(A), [hereinafter cited as "ABA Code"]; California Rules of Professional Conduct Rule 2–111(A)(4); [hereinafter cited as "Cal.Rules"]; *see, e.g., Groper v. Taff*, 717 F.2d 1415, 1418 (D.C. Cir.1983); *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 708 (6th Cir.1982); *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.*, 546 F.2d 530, 538 (3d Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *J.P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357, 1359 (2d Cir.1975), or (2) whether the attorney may be called other than on behalf of his client and his testimony *is or may be prejudicial* to the client, ABA Code DR 5–102(B); Cal.Rule 2–111(A)(5); *see, e.g., Kroungold v. Triester*, 521 F.2d 763, 766

2. Style has not appealed the underlying disqualification motion, so we need not decide whether the motion was properly denied. We address the merits of the motion here only insofar as they bear on the issue of whether Anten, Style's attorney, acted in bad faith.

3. During the period relevant to this controversy, the California Rules of Professional Conduct and the ABA Code of Professional Responsibility provided the governing ethical standards for the Central District of California. Local Rule 1.3(d) provided:

> Every member of the bar of this Court and any attorney permitted to practice in this Court under paragraph (b) hereof shall familiarize himself with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto, which are hereby adopted as standards of professional conduct of this Court. This specification shall not be interpreted to be exhaustive of the standards of professional conduct. In that connection, the Code of Pro-

fessional Responsibility of the American Bar Association should be noted....

This rule has since been amended to omit reference to the ABA Code, *see* Local Rule 2.5.1, but this has no bearing on the question before us, because the ABA Code and the California Rules are substantially identical with respect to the issues we face here.

We also note that in 1983, the ABA approved the Model Rules of Professional Conduct. Here too, with respect to the questions raised on this appeal, the Model Rules do not materially differ from the Code of Professional Responsibility and would not affect the result we reach. *See* Model Rules of Professional Conduct, Rule 3.7 (standard is whether "the lawyer is likely to be a necessary witness"), & comment (noting that if "there is likely to be a substantial conflict between the testimony of the client and that of the testifying lawyer," continued representation is improper under Rule 1.7 (governing conflicts of interest) ).

The conduct of Optyl's counsel did not violate any of these ethical rules.

(3d Cir.1975); *Teleprompter of Erie, Inc. v. City of Erie,* 573 F.Supp. 963, 965 (W.D. Pa.1983); *Davis v. Stamler,* 494 F.Supp. 339, 342–43 (D.N.J.1980), *aff'd,* 650 F.2d 477 (3d Cir.1981); *Smith v. New Orleans Federal Savings & Loan Association,* 474 F.Supp. 742, 749–50 (E.D.La.1979); *Freeman v. Kulicke & Soffa Industries, Inc.,* 449 F.Supp. 974, 978 (E.D.Pa.1978), *aff'd mem.,* 591 F.2d 1334 (3d Cir.1979).

[5] Optyl produced evidence in the district court showing that the extent of its counsel's participation in drafting the letter was limited to giving legal advice. Optyl claimed that any testimony its counsel might be asked to give would be protected by the attorney-client privilege. Optyl further asserted that it had no reason to call its counsel to testify and, even if they were called, their testimony would not be prejudicial to Optyl's case.

Style did not point to any evidence to refute Optyl's assertions. In fact, Style did not depose Optyl's counsel prior to moving for disqualification. Style relied entirely upon one interrogatory answer in which Optyl acknowledged that its counsel had participated in drafting the disputed letter. In short, Style offered absolutely no showing that Optyl "ought" to call its counsel to testify or that counsels' testimony might have been prejudicial if Anten had called Optyl's counsel to testify. *See Rosen v. NLRB,* 735 F.2d 564, 575 (D.C.Cir.1984) (mere allegations of impropriety are insufficient to compel withdrawal); *cf. Rhinehart v. Stauffer,* 638 F.2d 1169, 1171 (9th Cir.1979) (per curiam) (before filing an action, attorney has duty to investigate claims to see that they have merit).

On appeal, Anten implicitly admits that disqualification was not required under the disciplinary rules that deal specifically with lawyer disqualification, since his sole contention now is that disqualification was required by Canon 9 of the ABA Code, which proscribes "even the appearance of professional impropriety." *See also* Local Rule 2.5.2, Central District of California.[4] We find this argument meritless.

Although this court has held that Canon 9 alone can be a sufficient ground for disqualification, the circumstances are extreme, i.e., when the alleged impropriety is clear, affects the public view of the judicial system or the integrity of the court, and is serious enough to outweigh the parties' interests in counsel of their own choice. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1360 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982); *accord Norton v. Tallahassee Memorial Hospital,* 689 F.2d 938, 941 (11th Cir.1982).

Obviously, preservation of public trust in the legal system is an essential goal. At the same time, however, we must be cautious not to overuse Canon 9 as the basis for attorney disqualification. As the Second Circuit has noted: "Canon 9 ... should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules." *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1295 (2d Cir.1975).

Anten does not allege any specific improprieties that would result if Optyl's counsel testified in this case. Instead, his theory is that his client, Style, would be prejudiced if Optyl's counsel testified, since Anten would then be handicapped in challenging the credibility of opposing counsel. We find several difficulties with this theory.

First, we cannot see why Optyl's counsel need be witnesses. Optyl asserts that it will not call its counsel to testify, and Anten has not offered any reason why Style would or should call them. In fact, he admits that counsels' testimony would be favorable to Optyl and unfavorable to Style. The only reason we can see for

---

**4.** Former Local Rule 1.3(d) (now Rule 2.5.2) provided:

No attorney admitted to practice before this Court shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein.

Anten's suggestion that he will call Optyl's counsel is to use it as a predicate for the disqualification motion.

Second, we find Anten's "prejudice" argument unpersuasive. It may be awkward to impeach a fellow attorney's credibility, *International Electronics Corp. v. Flanzer*, 527 F.2d at 1294, but the problem remains since counsel, disqualified or not, still can testify. *See* Comment, *The Rule Prohibiting An Attorney From Testifying at Client's Trial: An Ethical Paradox*, 45 U.Cin.L.Rev. 268, 271 (1976). Opposing counsel's duty to represent his client's interests zealously, *see* ABA Code, Canon 7, DR 7–101(A)(1), should overcome any professional loyalty owed to a colleague. *See Greenebaum-Mountain Mortgage Co. v. Pioneer National Title Insurance Co.*, 421 F.Supp. 1348, 1354 (D.Colo.1976). Nor is there any special reputation for truth-telling reserved to lawyers that would unduly prejudice the opposing side. *See* Wydick, *Trial Counsel as Witness: The Code and the Model Rules*, 15 U.C.D.L.Rev. 651, 662–63 (1982).

Finally, and perhaps most important, Anten's "prejudice" theory sweeps overbroadly. The ethical rules strike a balance between the competing interests of a client's right to choose counsel and the inconsistency of an advocate giving testimony. The drafters of the rules clearly contemplated that in some circumstances the balance would tip in favor of the client, and trial counsel would be permitted to testify. *See, e.g.,* DR 5–101(B)(4), 5–102(A) (attorney may continue representation if testimony would be on behalf of client and "substantial hardship" would result from withdrawal); Cal.Rule 2–111(A)(4) (attorney may continue representation if testimony would be on behalf of client and client consents after full disclosure). Anten's view would preclude trial counsel's ever taking the stand. The "prejudice" he describes would exist in all cases, and courts would be forced to grant disqualification motions whenever counsel threatens to call opposing counsel.

### D. Bad Faith and Tactical Misuse of Disqualification Motions

■ The drafters of the ABA Code have cautioned that the ethical rules "[were] not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel." ABA Code, Canon 5, n. 31; *accord Kroungold v. Triester*, 521 F.2d at 766. The cost and inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is significant. *See* Brown & Brown, *Disqualification of the Testifying Advocate—A Firm Rule?* 57 N.C.L.Rev. 595, 619–21 (1979). Because of this potential for abuse, disqualification motions should be subjected to "particularly strict judicial scrutiny." *Rice v. Baron*, 456 F.Supp. 1361, 1370 (S.D.N.Y.1978); *see also Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir.1982).

We have concluded that Anten's disqualification motion was utterly without merit. Further, we conclude from a review of the record that Anten had absolutely no basis for filing a disqualification motion at the time he filed it. His only information, based on the answer to one interrogatory, was that Style's counsel had given legal advice concerning the letter. Any testimony concerning the legal advice would be privileged. At no time during the pendency of the motion did Anten undertake discovery to support any supposition or speculation he might have had that counsel's role was other than as legal adviser.

Bad faith is apparent from such a record. But the record shows even more evidence of bad faith. Anten sought a number of unreasonable stipulations regarding the disputed letter: that the letter and the responses be excluded because the letter was admittedly libelous; that they be excluded because Optyl could not determine the exact number of letters sent and the persons to whom they were sent;[5] and that Anten

---

**5.** Optyl supplied its customer list to Style, but cautioned that it probably had been updated to

include approximately one dozen new custom-

would not call Optyl's counsel as witnesses if Optyl would admit that the letter was false, drafted with intent to harm Style, and prepared in a "personal pique" and "out of desperation" after the denial of Optyl's motion for a preliminary injunction. This conduct reveals that Anten's motive for bringing the libel counterclaim and the motion to disqualify was to find some way to exclude the evidence obtained by the mailing.

In short, the record is replete with evidence of tactical maneuvers undertaken in bad faith. Nonetheless, Anten asserts that we must still remand to the district court, because it failed to make an express finding of recklessness or bad faith, as required by *Barnd v. City of Tacoma,* 664 F.2d at 1343.

In general, our cases have read *Barnd* to require a finding of bad faith to support sanctions under section 1927. *See, e.g., United States v. Austin,* 749 F.2d at 1408, *Lone Ranger Television,* 740 F.2d at 720; *Blodgett,* 709 F.2d at 610. In *Austin,* we remanded to the district court for factual findings because the record indicated that counsel had merely shown a "lack of diligence" in locating his client, an insufficient basis by itself for imposition of sanctions under section 1927. 749 F.2d at 1409. In *Blodgett,* we remanded the district court's award of sanctions for filing of a frivolous appeal, primarily because the attorney in that case had not been given a hearing to explain his conduct. 709 F.2d at 610.

In the present case, Anten was given a full hearing concerning sanctions, and he was given ample opportunity to explain his conduct. We do not have before us an ambiguous record, but one that clearly indicates that Anten used the ethical rules and a disqualification motion as tactical devices.

■■■■ A district court's failure to make express findings does not require a remand if "a complete understanding of the issues

ers, whose names had been added to the list after the mailing.

may be had [from the record] without the aid of separate findings." *Swanson v. Levy,* 509 F.2d 859, 861 (9th Cir.1975); *accord Nicholson v. Board of Education Torrance Unified School District,* 682 F.2d 858, 866 n. 11 (9th Cir.1982); *South-Western Publishing Co. v. Simons,* 651 F.2d 653, 656 n. 2 (9th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). We have before us a complete record of the relevant proceedings in the district court. The record reflects that the district court was well aware of the bad faith standard under section 1927. Both parties submitted extensive arguments concerning whether or not Anten's conduct amounted to bad faith. In fact, when Anten moved for reconsideration of the district court's decision, he specifically argued that "this court's previous decision was based on an erroneous finding of fact that defendant's counsel had no basis for a disqualification motion and that it was brought in bad faith."

To remand this case to the district court would elevate form over substance. The district court condemned Anten's conduct. We are convinced from the record that the district court necessarily found that Anten acted in bad faith, a finding amply supported by the record.

*E. Reasonableness of Fee Award*

■■■ Anten contends that even if the imposition of costs and fees under section 1927 was appropriate, the amount awarded was excessive. The only complaint Anten raises concerning the amount of the award is that Optyl has not provided sufficient detail. Anten raised the same arguments in the district court, to which Optyl responded with a detailed breakdown of its fees and costs. We conclude the district court had adequate information from which to determine an award and did not abuse its discretion in making its award.[6]

6. The district court awarded $3,000 less in fees and costs than Optyl had requested.

*F. Fees and Costs on Appeal* [7]

■ Both Anten and Optyl move for attorneys' fees and costs on appeal. We deny Anten's request and grant Optyl's.

Anten argues that he is entitled to a fee award because Optyl has mischaracterized the law and has admitted that the district court made an error of law. This argument is itself frivolous. Optyl has contended throughout that no canon or rule requires disqualification. It has admitted that Canon 9 can itself be the basis for disqualification *in some cases,* but that is not inconsistent with its position that Canon 9 does not support disqualification in *this* case. We deny Anten's request for fees on appeal.

We grant Optyl's request because we find the prosecution of this appeal to be as frivolous as the disqualification motion filed in the district court. On this appeal, Anten merely reiterates the arguments he made to the district court. His arguments were frivolous before both courts.

The court was affronted by Anten's counsel's misstatement of the record during oral argument. He asserted that Anten deposed Optyl's president before bringing the disqualification motion and that Optyl's president admitted in his deposition that the statements contained in the disputed letter were false. In truth, the deposition was not taken until after the disqualification motion had been brought and denied, and Optyl's president merely said that one statement of the letter, (that Optyl's future depended on its customers' responding to the letter), may have been overbroad. This misrepresentation violates the ethical rules governing attorneys who practice before our court, *see* ABA Code, DR 1–102(A)(4), (5), 7–102(A)(5), and provides an additional basis for imposing sanctions on appeal. *See Malhiot v. Southern California Retail Clerks Union,* 735 F.2d 1133, 1138 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985).

### III. CONCLUSION

We affirm the district court. We grant Optyl's request for fees and award double costs. Fed.R.App.P. 38; 28 U.S.C. § 1912; *see McConnell v. Critchlow,* 661 F.2d 116, 118 (9th Cir.1981). We make this award jointly and severally against Anten and his counsel on appeal, Robert Ezra. Within thirty days of the date of this decision, Optyl shall file with this court a statement of fees and costs incurred on appeal.

AFFIRMED.

---

7. The district court originally awarded fees and costs against Anten prospectively for any appeal of its order. The parties stipulated that they would not appeal this portion of the district court's order, but would instead address their requests to the discretion of this court.