809 F.2d 548
 1987-1 Trade Cases 67,608
 UNIOIL, INC., et al., Plaintiffs,
and
Heck Oil, Inc.; Heck & Heck, Inc.; and Mark Zelezny,
Plaintiffs-Appellants,
v.
E.F. HUTTON & CO., INC.; Kurt Feshback; Stockbridge
Partners, Inc.; Richard Jacoby; Haim Pekelis;
Shearson-American Express, Inc.; and Goldman Sachs & Co.;
and Donaldson, Lufkin & Jenrette Securities Corp.,
Defendants-Appellees.
 No. 85-6024.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 3, 1986.
Decided Oct. 15, 1986.
As Amended on Denial of Rehearing and Rehearing En Banc Feb. 26, 1987.
 
 Alioto & Alioto, Joseph L. Alioto, Joseph M. Alioto, Patricia E. Henle, Sharon S. Chandler, Lewis, D'Amato, Brisbois & Bisgaard, San Francisco, Cal., Roy G. Weatherup, Robert L. Kaufman, Haight, Dickson, Brown & Bonesteel, Santa Monica, Cal., for plaintiffs-appellants.
 C. Stephen Howard, Tuttle & Taylor, Inc., Paul A. Richler, Judith K. Otamura-Kester, Los Angeles, Cal., Keesal, Young & Logan, Terry Ross, Ben Suter, San Francisco, Cal., Frank Kaplan, Alschuler, Grossman & Pines, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, FARRIS, and CANBY, Circuit Judges.
 OPINION
 WALLACE, Circuit Judge:
 
 
 1
 Heck & Heck, Inc. and Heck Oil, Inc. (the Heck companies) and Zelezny, along with their counsel, Joseph L. Alioto (Alioto) of the firm of Alioto & Alioto, and Donald Barton (Barton) of the firm of Donaldson & Barton, appeal from the district court's order granting their motion under rule 41(a)(2), Fed.R.Civ.P., for voluntary dismissal of their claims on condition that they reimburse the defendants $165,774.84 in expenses and attorneys' fees. Alioto appeals from the district court's order imposing sanctions against him for violations of rule 11, Fed.R.Civ.P., in the amount of $294,141.10. We dismiss the appeal from the rule 41(a)(2) order for lack of appellate jurisdiction. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 over Alioto's appeal from the rule 11 sanctions, and we affirm.
 
 
 2
 * Unioil, Inc. (Unioil) is a company engaged in oil and gas exploration and production. During 1983, the price of Unioil's publicly traded stock soared from $1.25 per share early in the year to $13.75 per share in mid-December. At the beginning of February 1984, the stock was trading around $10 per share.
 
 
 3
 In early February 1984, Unioil's stock sharply declined. On February 7, the Wall Street Journal published an article reporting that several professional investors were selling Unioil stock "short" (i.e., were selling for future delivery stock that they did not yet own) in the belief that it was overvalued. The article stated that some of Unioil's public announcements had proven to be too optimistic. It also disclosed that Unioil's chairman of the board of directors, Richards, had twice previously been cited by the Securities and Exchange Commission for making false and misleading statements. In the days following publication of this article, Unioil stock further plummeted to $2.625 per share.
 
 
 4
 On March 21, 1984, Unioil, Richards, the Heck companies and Zelezny, filed a complaint in district court. The Heck companies owned large blocks of Unioil shares. Zelezny, a stockbroker, also owned Unioil shares. In addition, the named plaintiffs purported to be representatives of a class of all other Unioil shareholders. Alioto and Barton acted jointly as counsel for all plaintiffs. They sued several brokerage houses and individuals (the defendants), alleging a concerted scheme to sell Unioil stock short in violation of federal antitrust and securities laws, RICO, and various California laws. The complaint further alleged that the defendants had defamed Unioil and Richards.
 
 
 5
 The role of Zelezny in this purported class action litigation merits special focus. Since the Heck companies were major shareholders of Unioil and appeared to be closely aligned with Unioil management including Richards, Zelezny was the only named plaintiff with the appearance of independence from Unioil leadership. Zelezny had his first contact with this litigation when Barton, the referring co-counsel, approached him in February 1984 about the alleged market manipulation of Unioil stock. Barton, not Zelezny, first raised the subject of Zelezny's becoming a named plaintiff in the case.
 
 
 6
 Zelezny had not yet agreed to become a named plaintiff when Unioil announced in late February 1984 that it and a group of its shareholders had retained Alioto to institute a class action alleging market manipulation of Unioil stock. Alioto never spoke with Zelezny prior to filing the complaint, nor did he inquire whether Barton had investigated Zelezny's suitability as a named plaintiff in the purported class action. Alioto learned from Barton only that Zelezny had sold Unioil stock the day after the Wall Street Journal article appeared.
 
 
 7
 On May 3, 1984, the defendants commenced a deposition of Zelezny. The following day, Zelezny failed to appear for the continuation of his deposition. Instead, Barton announced that Zelezny had decided to withdraw as a named plaintiff and would not appear for further deposition questioning. The defendants then obtained a magistrate's order requiring Zelezny to complete his deposition. Zelezny appeared for three more days of testimony. Zelezny's deposition testimony was, in the judgment of the district court, "in many critical respects contrary to the allegations of the complaint": (1) whereas the complaint alleged that defendants' short selling and fraudulent misrepresentations drove the price of Unioil stock down and caused shareholders to sell at a loss, Zelezny testified that, aware that short selling was occurring, he purchased rather than sold Unioil shares in the belief that the price of the shares would eventually be driven up when the short sellers had to cover; (2) whereas the complaint alleged that plaintiffs sold Unioil shares at artificially depressed prices between December 1, 1983 and February 29, 1984, Zelezny testified that he thought that Unioil was selling at a fair price until February 7, 1984; and (3) whereas the complaint alleged that plaintiffs engaged in stock transactions based on false statements by defendants, Zelezny testified that he never bought or sold Unioil stock in reliance on anything said by any of the defendants.
 
 
 8
 On May 14, one day before Zelezny's deposition was to resume again, Barton announced that Zelezny would not appear, that neither plaintiffs nor their attorneys would appear for any further depositions, and that plaintiffs would voluntarily dismiss their complaint. On May 15, 1984, plaintiffs filed a notice purporting to dismiss their entire action without prejudice pursuant to Fed.R.Civ.P. 41(a)(1). One defendant objected to the notice on the ground that dismissal of an alleged class action requires court approval under rules 23(e) and 41(a)(1), Fed.R.Civ.P. Plaintiffs then moved pursuant to rule 41(a)(2), Fed.R.Civ.P., for a court order approving the dismissal of their action without prejudice. In support of their motion, plaintiffs cited three Unioil shareholder class actions that had been filed against Unioil and Richards in mid-April 1984. These actions named Unioil and Richards as defendants and alleged that mismanagement was the cause of the decline in the price of Unioil stock. Perceiving that Alioto and Barton would face a conflict of interest in representing both Unioil and the class of Unioil shareholders, plaintiffs stated their desire not to assert claims on behalf of the shareholder class.
 
 
 9
 In response to plaintiffs' rule 41(a)(2) motion, defendants asked the district court to require, as a condition of any dismissal without prejudice, that plaintiffs and their counsel pay defendants' attorneys' fees and costs incurred in the action. Pursuant to Fed.R.Civ.P. 11, defendants further sought sanctions of attorneys' fees and costs against plaintiffs' counsel on the grounds that plaintiffs' counsel undertook representation of plaintiffs with conflicting interests and failed to conduct a reasonable inquiry into the factual basis of the complaint. At this juncture, Unioil and Richards, through newly retained counsel, withdrew their motion for court approval of dismissal of their claims.
 
 
 10
 In November 1984, the district court entered an order granting the motion of the Heck companies and Zelezny for dismissal without prejudice of their individual and class claims on condition that these plaintiffs and/or their counsel--Alioto and Barton--"reimburse defendants for their costs and expenses, including attorneys' fees, reasonably incurred in defending against the class action claims." The district court imposed another condition that is not at issue on this appeal.
 
 
 11
 The district court also imposed rule 11 sanctions of attorneys' fees and costs against Alioto. The court held that Alioto's conduct had violated rule 11 in three respects: (1) Alioto did not conduct a reasonable investigation into the facts upon which the class allegations were made or into the potential conflict of interest that was inherent in undertaking representation of the class of Unioil shareholders in an action in which Unioil was one of the named plaintiffs; (2) Alioto tried to disengage from class discovery without cause and from the class action suit without court approval; (3) Alioto submitted declarations, in opposition to defendants' motions, that plainly did not comport with the requirements for statements under oath.
 
 
 12
 Alioto then moved the court to reconsider its order on the ground that the court had failed to consider material facts that had been brought to its attention. In an order dated January 14, 1985, the district judge found that Alioto's arguments were without basis and were made in bad faith. She therefore ordered that Alioto be further sanctioned under rule 11 in the amount of attorneys' fees and costs reasonably incurred by defendants in opposing the motion to reconsider.
 
 
 13
 The district court referred the determination of the amount of attorneys' fees and costs on the rule 41(a)(2) condition and under the rule 11 sanctions to a magistrate. In an order entered in June 1985, the district court confirmed the magistrate's recommendation that plaintiffs' voluntary dismissal without prejudice of their class action claims be conditioned on the payment by the Heck companies, Zelezny, Alioto, or Barton of $165,774.84 to defendants. The court further confirmed that the rule 11 sanctions required Alioto to pay to defendants within thirty days $294,141.10, such amount to be reduced by any reimbursement received by defendants during that period under the rule 41(a)(2) condition.
 
 
 14
 In an order entered in March 1986, the district court dismissed Unioil's and Richards' individual claims with prejudice for failure to prosecute. Unioil and Richards are not parties to this appeal.
 
 II
 
 15
 The Heck companies, Zelezny, Alioto, and Barton purport to appeal from the district court's rule 41(a)(2) order conditioning the dismissal without prejudice of their claims on the reimbursement to defendants of costs and attorneys' fees in the amount of $165,774.84. While no party raises the issue, we must address sua sponte whether we have jurisdiction over this appeal. See Baumann v. Arizona Department of Corrections, 754 F.2d 841, 843 (9th Cir.1985).
 
 
 16
 We may readily reject one seeming jurisdictional defect--the fact that the order appealed from is interlocutory in that it was entered at a time when the claims of Unioil and Richards remained to be decided by the district court. Absent a certificate under Fed.R.Civ.P. 54(b), such an order is generally not appealable. In Anderson v. Allstate Insurance Co., 630 F.2d 677 (9th Cir.1980) (Allstate), however, we described an exception to the finality rule: we held that we may treat an interlocutory order as a final order when that portion of the case that remained in the district court has subsequently been terminated. Id. at 680-81. Because Unioil's and Richards' claims have since been dismissed with prejudice, we may, under Allstate, disregard the fact that they previously rendered the district court's order interlocutory.
 
 
 17
 This, however, is not the end of our jurisdictional inquiry, for a far more troubling difficulty besets this appeal. Rule 41(a)(2), governing voluntary dismissal by court order, provides in part: "Except as provided in [rule 41(a)(1) ], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). As we explained recently in Lau v. Glendora Unified School District, 792 F.2d 929 (9th Cir.1986) (per curiam) (Lau), an order granting a conditional voluntary dismissal does not take effect of its own force. Id. at 930. Rather, the plaintiff has "a reasonable period of time within which [either] to refuse the conditional voluntary dismissal by withdrawing [the] motion for dismissal or to accept the dismissal despite the imposition of conditions." Id. at 931.
 
 
 18
 Here, the Heck companies and Zelezny have neither withdrawn their motions for voluntary dismissal under rule 41(a)(2) nor expressly accepted the conditional voluntary dismissal. Three courses of action present themselves. First, we could conclude that the failure expressly to accept the conditional voluntary dismissal renders it inoperative. If so, their claims survive in the district court, the order from which they and counsel appeal is interlocutory, and we are without jurisdiction. Second, we could determine that by not withdrawing their motions for voluntary dismissal within a reasonable time, the Heck companies and Zelezny must be deemed to have accepted the conditional voluntary dismissal. Under this approach, the district court's order would be final. Third, as we did in Lau, 792 F.2d at 930, we could remand this case to the district court in order that they could clearly choose either to withdraw their motions for voluntary dismissal or to accept the conditional voluntary dismissal.
 
 
 19
 We cannot pursue the first course of action. Lau makes clear that a plaintiff must affirmatively act to withdraw a motion for voluntary dismissal. To construe inaction as rejection of a conditional voluntary dismissal would conflict with Lau.
 
 
 20
 We are left to choose between our second and third courses of action. Significantly, Lau in no way indicates that we should always remand when a plaintiff has neither withdrawn the motion for voluntary dismissal nor accepted the conditional voluntary dismissal. On the contrary, Lau expressly left open "whether a plaintiff who fails to withdraw the motion for dismissal [may] be regarded as having consented to the conditions attached." 792 F.2d at 931. We merely deemed remand "appropriate under [the] circumstances," as we observed both that the district court had not expressly granted plaintiff the option of withdrawing her motion for voluntary dismissal and that we had not previously held that plaintiffs should be made aware of such an option. Id. We therefore read Lau to hold that remand may be appropriate where a plaintiff neither knew nor had reason to know of the option of withdrawing the motion for voluntary dismissal.
 
 
 21
 Unlike the plaintiff in Lau, the Heck companies and Zelezny were plainly aware of their option to withdraw the motion for voluntary dismissal. In their reply memorandum opposing defendants' request for rule 41(a)(2) conditions, they explicitly spelled out this option, citing as authority the very District of Columbia Circuit case that Lau follows. Under these circumstances, a remand to the district court would be pointless.
 
 
 22
 Deciding a question left open by Lau, we therefore hold that a plaintiff who knows or has reason to know that he may withdraw his motion for dismissal will be deemed to have consented to the conditions attached to the voluntary dismissal unless he withdraws his motion within a reasonable time. The Heck companies and Zelezny have not withdrawn their motions within a reasonable time, but have instead pursued an appeal. It follows that they must be deemed to have accepted the district court's conditional voluntary dismissal. Therefore, the rule 41(a)(2) order from which they and counsel appeal is a final order.
 
 
 23
 That the order granting the conditional voluntary dismissal is final, however, does not alone mean that we have jurisdiction. To be appealable, an order must be adverse to the appealing party. As a general rule, a plaintiff may not appeal a voluntary dismissal because it is not an involuntary adverse judgment against him. Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir.1986); Seidman v. City of Beverly Hills, 785 F.2d 1447, 1448 (9th Cir.1986) (per curiam).
 
 
 24
 The circuits have provided a range of answers to the question whether this general rule applies to a conditional voluntary dismissal. The Sixth Circuit has held that conditional voluntary dismissals are not appealable, since the plaintiff has agreed to the order, even if with reluctance. Scholl v. Felmont Oil Corp., 327 F.2d 697, 700 (6th Cir.1964); see also 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2376, at 247.
 
 
 25
 In LeCompte v. Mr. Chip, Inc., 528 F.2d 601 (5th Cir.1976) (LeCompte), the Fifth Circuit adopted an intermediate position, holding that a plaintiff can appeal a rule 41(a)(2) conditional dismissal that "involves prejudice in a legal sense." Id. at 604. In LeCompte, the trial court, while denominating its order a dismissal without prejudice, id. at 603, had imposed rule 41(a)(2) conditions that "severely circumscribed [plaintiff's] freedom to bring a later suit." Id. at 604; see id. at 602 (conditions included requirement that any subsequent suit be brought in same court and only upon showing of extraordinary circumstances). The Fifth Circuit distinguished
 
 
 26
 the usual conditions attached to a voluntary dismissal[, which] involve prejudice only in a practical sense (e.g., paying costs or expenses, producing documents, producing witnesses). The imposition of this type condition does not amount to the type of "legal prejudice" which would entitle a plaintiff to appeal the grant of the dismissal he obtains.
 
 
 27
 Id. at 603; see also Yoffe v. Keller Industries, Inc., 580 F.2d 126, 129-31 (5th Cir.1978) (Yoffe), cert. denied, 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979).
 
 
 28
 The Seventh Circuit is most expansive in its view of appellate jurisdiction over voluntary conditional dismissals. In Cauley v. Wilson, 754 F.2d 769, 770-71 (7th Cir.1985), the Seventh Circuit held that it had jurisdiction of voluntary dismissals conditioned on payment of fees, "at least in cases in which a plaintiff requests a dismissal in order to proceed in state court." Id. at 771; see also id. at 770-71 (suggesting, arguably erroneously, that the District of Columbia Circuit has held that it has jurisdiction over appeals of voluntary dismissals conditioned on payment of fees).
 
 
 29
 We spoke on the issue in Coursen v. A.H. Robins Co., 764 F.2d 1329 (9th Cir.) (Coursen), corrected, 773 F.2d 1049 (9th Cir.1985), where we held that a dismissal with prejudice was appealable, whether voluntary or involuntary. 764 F.2d at 1342-43, corrected, 773 F.2d at 1049. In the course of so holding, we stated, "A plaintiff may appeal a voluntary dismissal which imposes a condition that creates sufficient prejudice in a legal sense." 764 F.2d at 1342. We cited LeCompte as authority for this proposition, and also cited, with a see also signal, a case involving involuntary dismissal, Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1186-87 (8th Cir.1984). Coursen, 764 F.2d at 1342-43.
 
 
 30
 Accepting the statement in Coursen that a plaintiff may appeal a conditional voluntary dismissal that imposes sufficient legal prejudice, we must determine whether the condition of costs and attorneys' fees imposed on the rule 41(a)(2) order in this case renders the order appealable. We find it especially significant that our statement in Coursen is supported by a citation to the Fifth Circuit's opinion in LeCompte, rather than to its more recent opinion in Yoffe. LeCompte differs from Yoffe in at least one important respect: whereas LeCompte holds that a "usual" rule 41(a)(2) condition, such as "payment of costs and attorney's fees," does not involve legal prejudice, 528 F.2d at 603, Yoffe indicates that a condition imposing a "clearly unreasonable" amount of costs and fees may amount to appealable legal prejudice. 580 F.2d at 131. Thus, consistent with Coursen and LeCompte, we hold that a condition of costs and attorney's fees does not involve legal prejudice and therefore does not render a conditional voluntary dismissal adverse and appealable. In so holding, we in no way intend to suggest that we find the amount of costs and fees in this case clearly unreasonable. Nor do we foreclose the possibility that review of clearly unreasonable conditions could be obtained through a writ of mandamus.
 
 
 31
 Because the condition of costs and attorneys' fees that plaintiffs and counsel challenge does not involve legal prejudice, it is not adverse, and we have no jurisdiction over this appeal. We therefore dismiss the appeal of the rule 41(a)(2) order.
 
 III
 
 32
 Alioto challenges on several grounds the district court's imposition of rule 11 sanctions against him. The jurisdictional defect that precludes our review of the district court's rule 41(a)(2) order does not apply to Alioto's rule 11 appeal, since the court's imposition of sanctions is plainly adverse to him. An order imposing sanctions solely upon counsel, a non-party to the underlying action, is immediately appealable as a final order. Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1047 n. 1 (9th Cir.1985); Kordich v. Marine Clerks Association, 715 F.2d 1392, 1393 (9th Cir.1983).
 
 
 33
 Rule 11, as amended in 1983, states in part:
 
 
 34
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney ... constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 35
 Fed.R.Civ.P. 11. A violation of rule 11 need not be premised on a finding of subjective bad faith. Zaldivar v. City of Los Angeles, 780 F.2d 823, 829 (9th Cir.1986) (Zaldivar). Rather, an attorney violates rule 11 whenever he signs a pleading, motion, or other paper without having conducted a reasonable inquiry into whether his paper is frivolous, legally unreasonable, or without factual foundation. Id. at 830-31. An attorney also violates rule 11 whenever he signs a paper that is filed for a purpose that is improper under an objective standard. Id. at 831 & n. 9.
 
 
 36
 In Zaldivar, we set forth the following standards of review for orders imposing rule 11 sanctions:
 
 
 37
 If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review the factual determinations of the district court under a clearly erroneous standard. If the legal conclusion of the district court that the facts constitute a violation of the Rule is disputed, we review that legal conclusion de novo. Finally, if the appropriateness of the sanction imposed is challenged, we review the sanction under an abuse of discretion standard.
 
 
 38
 Id. at 828 (footnote omitted).
 
 A.
 
 39
 The primary ground--indeed, according to Alioto's reply brief, the sole ground--upon which the district judge imposed rule 11 sanctions in her November 1984 order was that Alioto had failed to conduct a reasonable inquiry into the facts upon which the class allegations in the complaint were based and into the potential conflict of interest inherent in representing a class of Unioil shareholders while at the same time representing Unioil and Richards.
 
 
 40
 Whether Alioto's inquiry was reasonable must be determined in light of the circumstances in which he acted. See Fed.R.Civ.P. 11 advisory committee note ("The standard is one of reasonableness under the circumstances.") From factual findings of the district court that Alioto has not shown to be clearly erroneous, we conclude that the relevant circumstances include (1) that Alioto had reason to know that Zelezny was the only named plaintiff with the appearance of independence from Unioil and its management; (2) that Alioto had never previously worked with Barton and knew virtually nothing about him, his experience, or his inquiry into Zelezny's suitability as a class plaintiff; and (3) that the Alioto firm is, and represented itself as, experienced and specialized in complex business litigation. There was a substantial retainer paid to Alioto and there was ample time for investigation and, therefore, there were no severe constraints of time or money that impeded Alioto's inquiry. Finally, we consider it significant that the class allegations filed by Alioto threatened defendants with massive liability and foreseeably aroused a vigorous and costly defense. Just as the gravity of foreseeable injury is relevant to determining a party's standard of care in a negligence case, so should the cost of a foreseeable response by opposing parties be relevant to determining an attorney's standard of reasonable inquiry.
 
 
 41
 We now consider whether Alioto conducted a reasonable inquiry into the facts upon which the class allegations were based. Alioto does not dispute the district court's findings that he never spoke with Zelezny prior to filing the complaint and that he never asked of, or learned from, Barton information bearing on whether Zelezny was a sophisticated investor, whether Zelezny had relied upon any of the defendants' representations, and whether Zelezny would fairly and adequately represent the class. According to a finding of fact that we do not find clearly erroneous, Alioto knew only that Zelezny had sold Unioil stock the day after the Wall Street Journal article was published. We agree with the district court that, aware of this fact alone, Alioto had no reasonable basis for determining that Zelezny's "claims or defenses [were] typical of the claims or defenses of the class," Fed.R.Civ.P. 23(a)(3), or that Zelezny would "fairly and adequately protect the interests of the class," Fed.R.Civ.P. 23(a)(4).
 
 
 42
 Alioto offers three basic arguments to support his contention that he did not violate rule 11. First, he argues that his reliance on Barton satisfied the requirement of reasonable inquiry. We agree that reliance on forwarding co-counsel may in certain circumstances satisfy an attorney's duty of reasonable inquiry. See Fed.R.Civ.P. 11 advisory committee note. In relying on another lawyer, however, counsel must "acquire[ ] knowledge of facts sufficient to enable him to certify that the paper is well-grounded in fact." Schwarzer, Sanctions Under the New Federal Rule 11--A Closer Look, 104 F.R.D. 181, 187 (1985). An attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry. Id.
 
 
 43
 Second, Alioto appears to argue that he did not violate rule 11 since Zelezny was in fact a proper class plaintiff. The core of Alioto's argument is that Zelezny's lack of reliance on defendants' alleged misrepresentations is irrelevant to his viability as a class representative since, under Blackie v. Barrack, 524 F.2d 891 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), proof of subjective reliance is unnecessary to establish a rule 10b-5 claim. But see, e.g., Lewis v. Johnson, 92 F.R.D. 758, 759-60 & n. 1 (E.D.N.Y.1981) (even though class action plaintiffs need not prove reliance in a securities fraud case, certification must be denied when the putative class plaintiff is subject to atypical reliance and materiality defenses that might prejudice the class' chances of success). Alioto did not make this argument as a defense to the imposition of rule 11 sanctions in the district court and has provided us with no reasons for his failure to do so. Therefore, because we believe that no manifest injustice will result if we decline to consider the issue, we will not address it here. See Alexopulos v. Riles, 784 F.2d 1408, 1411 (9th Cir.1986).
 
 
 44
 Third, Alioto argues that the Heck companies were proper class plaintiffs and that we must give substantial weight to his investigation into their claims in deciding whether his inquiry into the facts underlying the class allegations was reasonable. We disagree. Alioto had reason to know that the Heck companies appeared to be closely aligned with Unioil and its management. The district court did not err in determining that a reasonably competent business attorney should have realized, upon reading the Wall Street Journal article, the strong possibility that Unioil shareholders would sue Unioil management. Under these circumstances, Alioto had a duty to take reasonable steps to ensure that the class claims were represented by a plaintiff independent of Unioil management and otherwise qualified under rule 23(a). Alioto took no such steps.
 
 
 45
 We therefore hold that the district court did not err in concluding that Alioto violated rule 11 by not making a reasonable inquiry into the facts on which the class allegations of the complaint were based. For similar reasons, we affirm the district court's conclusion that Alioto failed to conduct a reasonable inquiry into the potential conflict of interest inherent in representing a class of Unioil shareholders together with Unioil and Richards. As we just stated, the district court properly found that a reasonably competent business attorney should have recognized from the beginning the clear likelihood that Unioil shareholders would bring suit against Unioil management. We focus only on the duty Alioto had to conduct a reasonable inquiry into whether he should bring the class claims in the face of the potential conflict of interest. The record indicates that Alioto made no reasonable inquiry into the potential conflict of interest prior to filing the complaint. The district court properly determined that Alioto thereby violated rule 11. Because Unioil management was not found liable for a rule 11 violation, we need not assess defendants' allegation that the class claims filed by Alioto were part of a ploy by Unioil management to divert shareholders from suing Unioil and its management.
 
 
 46
 The district court provided at least two additional grounds for its imposition of sanctions in its November 1984 order. Because we conclude that the primary grounds by themselves are sufficient to sustain the sanctions imposed in the November 1984 order, we have no reason to address these additional grounds.
 
 B.
 
 47
 In its January 1985 order imposing rule 11 sanctions on Alioto for filing a motion to reconsider, the district judge found that Alioto had made "a total lack of any showing that the court [had] failed to consider a material fact presented to it." She further found that Alioto had unnecessarily and unreasonably multiplied the litigation. On appeal, Alioto argues only that he had a good ground to bring the motion, since the district court in its November 1984 order had, he argues, failed to consider evidence that he had relied on Barton. The district judge, however, had not failed to consider such evidence; on the contrary, she had held that the evidence was not sufficient to show that Alioto had relied on Barton. We affirm the court's ruling that Alioto's motion to reconsider violated rule 11.
 
 C.
 
 48
 Once a court finds that an attorney has violated rule 11, it must impose sanctions. Zaldivar, 780 F.2d at 831; accord Albright v. Upjohn Co., 788 F.2d 1217, 1221-22 (6th Cir.1986); Westmoreland v. CBS, Inc., 770 F.2d 1168, 1174-75 (D.C.Cir.1985) (Westmoreland ). Rule 11 authorizes a court to impose "an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.R.Civ.P. 11. "The selection of the type of sanction to be imposed lies of course within the district court's sound exercise of discretion." Westmoreland, 770 F.2d at 1175.
 
 
 49
 In its November 1984 and January 1985 orders, the district court ordered sanctions against Alioto in the amount of reasonable expenses, including attorneys' fees, incurred because of the papers filed in violation of rule 11. This type of sanction plainly comports with rule 11, and we find no abuse of discretion.
 
 
 50
 Alioto further challenges the amount of the rule 11 sanctions--$294,141.10, to be offset by any reimbursement received by defendants within thirty days pursuant to the rule 41(a)(2) conditional voluntary dismissal. Assisted by a magistrate, the district court determined this amount after careful proceedings in which Alioto fully participated. Alioto's arguments on appeal amount to nothing more than a blanket charge that the amount of the sanctions is patently unreasonable. We agree that the expenses and attorneys' fees determined to have been incurred by the defendants were substantial. But we cannot find them patently unreasonable in light of the massive liability that the complaint filed by Alioto threatened to impose upon multiple defendants.
 
 
 51
 AFFIRMED IN PART; DISMISSED IN PART.