WALLACE, Circuit Judge,
dissenting:
I respectfully dissent. I would not reach the merits of this appeal because, in my Anew, we lack jurisdiction to do so. Even if we had jurisdiction, however, I would still decline to reach the merits because the plaintiffs waived any challenge to the errors they now allege on appeal.
I.
This case comes to us in a unique procedural posture. For context, I begin with some background on an earlier case, referenced by the majority as “Apple II.” Apple II involved a different set of plaintiffs and a broader set of claims before Judge Ware than those in Apple III, which were before Judge Rogers, and are now before us on appeal.
The Apple II Plaintiffs were the first to raise the Rule 19 arguments we now see in the present appeal. But Judge Ware was unpersuaded and ruled against the Apple *1056 II Plaintiffs. The record indicates that Judge Ware’s July 11 order did not address at least some of the arguments made in the Apple II Plaintiffs’ opposition (and which the Apple III Plaintiffs raise here on appeal), including the argument that ATTM itself failed to claim an interest in the litigation, and that any claimed interest was not “cognizable” under Rule 19. Instead of addressing those arguments, Judge Ware’s order relied heavily on the Eleventh Circuit’s Laker Airways case in holding that ATTM was a necessary party under Rule 19 because “the Court will be required to evaluate ATTM’s conduct.”
The Apple II Plaintiffs disagreed with Judge Ware’s Rule 19 order. They wanted to appeal from it. But given the interlocutory nature of Judge Ware’s ruling, they were required to wait for a final judgment. The Apple II Plaintiffs did not want to wait, however. In fact, waiting would have been pointless because the Apple II Plaintiffs’ entire litigation hinged on whether ATTM was a necessary party: if ATTM was required to be joined as a necessary party, individual arbitration was almost inevitable; but if ATTM was not required to be joined, Plaintiffs’ case would likely proceed through financially feasible class-action litigation. So, Plaintiffs needed a way to (1) sever any claims that could possibly implicate ATTM (to avoid arbitration), and (2) obtain immediate appellate review of Judge Ware’s Rule 19 analysis for the claims that could implicate ATTM. In the words of Plaintiffs’ counsel, “by keeping the [voice and data] claims together [with the apps claims], we couldn’t get the appellate review of the voice and data dismissal until we finish the apps case.”
Accordingly, Plaintiffs’ counsel devised a strategy: a new set of Plaintiffs (Apple III Plaintiffs) would bring a separate action (Apple III) to “segregate the voice and data claims into Apple III and have only the apps claims left in Apple II.” The premise behind creating the new action, rather than appealing directly from Judge Ware’s ruling in Apple II, was to enhance the Apple II Plaintiffs’ litigation position on appeal. This was done by excising from Apple II any claims that arguably implicated ATTM’s interests. The Apple III Plaintiffs believed that by removing the voice and data claims — which arguably implicated ATTM’s wireless service — from Apple II, “Apple II [could] now proceed strictly as an apps case [without implicating ATTM] and . . . Apple III [could] go ahead and be dismissed so that [the Apple III Plaintiffs could] take [Judge Ware’s] Rule 19 ruling up to the Ninth Circuit.”
But the Apple III Plaintiffs encountered a problem with this strategy. Because they were not the parties aggrieved by Judge Ware’s Apple II order, they could not appeal from it. They needed Judge Rogers to issue an adverse ruling against them — in Apple III — from which they could appeal. In an attempt to obtain such a ruling expeditiously (that is, without litigating the issue before Judge Rogers) both parties stipulated to import from Apple II all of their respective pleadings and motions, and asked Judge Rogers to rule on them as if they had been brought in the first instance in Apple III. Understandably confused by this rather unusual procedure, Judge Rogers told the parties that
it sounds like the issues that you’re asking me to decide ... have already been decided, so I don’t know why we’re going through this process again. I don’t know why we have another complaint that doesn’t include as a defendant [ATTM], which ... Judge Ware told you you needed to have as a ... party to the litigation. And if a judge in these [previous] cases has ruled [on that issue] ... then the law says you don’t get a second bite at the apple.... [1]
*1057 Counsel for the Apple III Plaintiffs responded that they had proceeded in this fashion “to limit ... the amount of work the court has to do, [and] to streamline things.” After explaining in detail the procedural history from Apple I and Apple II, counsel for the Apple III Plaintiffs told Judge Rogers that the point of the new Apple III litigation was to “create ... a device” to achieve appellate review of Judge Ware’s interlocutory order. That device, counsel explained, was a stipulation to dismiss the Apple III Plaintiffs’ claims with prejudice, but based on Judge Ware’s reasoning from the prior case, without having Judge Rogers make that determination anew as applied to them. In other words, Plaintiffs’ counsel said that the Apple III Plaintiffs were “willing to stipulate with Apple ... that the complaint ought to be dismissed based on Judge Ware’s ... ruling in Apple II ” because they assumed “the court would issue the same ruling it issued last time, which is that [ATTM] is a necessary and indispensable party in Apple III.”
Once Judge Rogers understood that the Plaintiffs were not asking her to rule on the merits of the Rule 19 issue, but rather were attempting only to create a vehicle for appellate review of Judge Ware’s order, Judge Rogers directed the parties to “come up with a plan” and to submit a stipulation that they believed would achieve their goals. Counsel for the Apple III Plaintiffs asked Judge Rogers if she would “prefer a form of order that essentially grants the 12(b)(7) motion,” but Judge Rogers, having earlier emphasized that the court was “overwhelmed right now” and that she was “not interested in doing busy work,” said that “[i]f the two of you can work it out so that you both have what you need in the record and all you really need is my signature,” “I would like to just (indicating) ... stamp something.” She concluded, “unless there’s some dispute ... then I don’t need to be involved, [except] to just put my signature.”
The Apple III Plaintiffs later submitted a joint stipulation to dismiss their claims under Rule 19 “[f]or the reasons set forth in Judge Ware’s ... Order” from Apple II. Judge Rogers — as she had promised— then signed the proposed order granting the dismissal “PURSUANT TO THE PARTIES’ STIPULATION,” and “for the reasons set forth in Judge Ware’s ... Order.” This appeal followed.
II.
In my view, Plaintiffs’ stipulation strategy produced a “final decision” that fails to invoke our statutory appellate jurisdiction because it was not involuntary or adverse to the Plaintiffs. We have statutory jurisdiction only over “appeals from ... final decisions of the district courts,” 28 U.S.C. § 1291, that are both involuntary and adverse to the appellant. See Seidman v. City of Beverly Hills, 785 F.2d 1447, 1448 (9th Cir.1986); Unioil, Inc. v. E.F. Hutton & Co., 809 F.2d 548, 555 (9th Cir.1986) (“To be appealable, an order must be adverse to the appealing party. As a general *1058 rule, a plaintiff may not appeal a voluntary dismissal because it is not an involuntary adverse judgement against him.”), abrogated on other grounds by Townsend v. Holman Consulting Corp., 929 F.2d 1358 (9th Cir.1990) (en banc).
We recently stated in Berger v. Home Depot USA Inc., 741 F.3d 1061, 1065 (9th Cir.2014), that “absent a settlement, a stipulation alone does not destroy th[e] adversity” required for appellate jurisdiction. Id. at 1065. See also Concha v. London, 62 F.3d 1493, 1507 (9th Cir.1995). Relying on Berger and Concha, the majority concludes that the parties’ stipulation to dismiss their claims produced a sufficiently “adverse” judgment because it was not “pursuant to a settlement,” and was “plainly adverse to the Plaintiffs’ interests.”
Berger is inapposite, however, because it presupposes procedural facts that do not exist in the present case. Berger involved a single action in which a party argued its case to one judge, the judge considered the argument and ruled against that party, and then the two opposing parties stipulated to dismissal for the sole purpose of obtaining a final appealable judgment. Berger governs that type of case, in which an involuntary, adverse interlocutory ruling merges into a final appealable judgment, see Balla v. Idaho State Bd. Of Corr., 869 F.2d 461, 468 (9th Cir.1989), which is then entered pursuant to a stipulation. For example, had the Apple II Plaintiffs stipulated to dismissal in their case, in order to achieve a final appealable ruling, that stipulation would have fallen squarely within Berger’s holding, and there would be no “adverseness” problem. But this case — Apple III — is different. Here, there was never an involuntary, adverse ruling against the Apple III Plaintiffs because they asked Judge Rogers to adopt Judge Ware’s reasoning against them. See Apple III Dkt. (4:12-cv-05404) No. 24, p. 10-11 (Plaintiffs’ counsel arguing to Judge Rogers that “the complaint [in Apple III] ought to be dismissed based on Judge Ware’s ... ruling in Apple II.”).
Concha is likewise inapposite. Concha says that a stipulated final judgment “with prejudice” is adverse to the plaintiffs’ interests — i.e., it has “sufficient prejudice in a legal sense” — because it “serves to bar his claims forever.” Concha v. London, 62 F.3d 1493, 1507 (9th Cir.1995). But Con-cha answered in the negative only the question whether a voluntary dismissal “without prejudice” would also be adverse to the Plaintiffs for purposes of statutory jurisdiction. It did not address the question presented in this case: whether a final decision of a district judge is involuntary and adverse to a party who stipulated to a particular analysis against it, and then asked the district judge to order final judgment, in order to argue on appeal that such analysis was actually incorrect.
Because the claims and parties in Apple III were different from those in Apple II, Judge Ware’s order from Apple II did not preclude Judge Rogers from deciding the Rule 19 issue in Apple III. Consequently, the Apple III Plaintiffs were required to argue their position independently in Apple III and to obtain an involuntary and adverse ruling against them in order to have an adverse decision from which to appeal. But they failed to do so. They said that they assumed Judge Rogers “would” rule consistently with Judge Ware, but they never in fact argued to Judge Rogers that Judge Ware’s analysis in Apple II was wrong, or that she should rule in their favor on the Rule 19 issue. Rather, they stipulated that Judge Rogers rule against them on the Rule 19 issue for reasons with which they ostensibly disagreed.
No case in our circuit stands for the proposition that a non-party to a case can disagree with a judge’s ruling then insti *1059 tute a new action, before a new judge, alleging a narrower set of claims, in which they urge their judge to adopt the prior judge’s analysis, and still have an involuntary and adverse ruling required for appellate jurisdiction when the new judge signs a stipulated final judgment. No adverseness exists in the new action where the issue was never actually litigated and no adverse positions were taken by the parties.
That the purpose of Plaintiffs’ strategy was to fast-track appellate review does not give us license to dispense with the requirement that in every separate action, the parties must take adverse positions on an issue and give the judge an opportunity to rule independently on their claims. Otherwise, parties could manipulate our appellate jurisdiction under the guise of efficiency, in order to circumvent the general rule that the district court be the first to pass judgment by applying a legal rule to a set of claims. Cf. Am. States Ins. Co. v. Dastar Corp., 318 F.3d 881, 885-86 (9th Cir.2003) (“A significant concern in assessing finality is whether the parties have attempted to manipulate our appellate jurisdiction. A party may not engage in manipulation either to create appellate jurisdiction or prevent it.” (citations omitted)).
In sum, because the final judgment below was not involuntary and adverse to the Apple III Plaintiffs, I am persuaded that we lack statutory jurisdiction over this appeal.
III.
Even if we had statutory jurisdiction, I would conclude that the Apple III Plaintiffs waived the Rule 19 issue by inviting Judge Rogers to adopt the very analysis that they now allege on appeal was erroneous. “ ‘[0]ne may not complain on review of errors below for which he is responsible.’” Deland v. Old Republic Life Ins. Co., 758 F.2d 1331, 1336-37 (9th Cir.1985), quoting Hudson v. Wylie, 242 F.2d 435, 448 (9th Cir.1957). See also Portland Gen. Elec. Co. v. U.S. Bank Trust Nat’l Ass’n, 218 F.3d 1085, 1089 (9th Cir.2000).
Although the Apple III Plaintiffs stipulated to incorporate both parties’ motions from Apple II, they ultimately drafted a stipulation dismissing their claims “for the reasons set forth in Judge Ware’s July 11, 2012 Order,” instead of first asking Judge Rogers either to revisit Judge Ware’s Rule 19 analysis in Apple II, or to perform her own Rule 19 analysis in which she could embrace their arguments. In fact, counsel for the Apple III Plaintiffs invited Judge Rogers to adopt Judge Ware’s alleged error, arguing that “the complaint [in Apple III ] ought to be dismissed based on Judge Ware’s ... ruling in Apple II.” At bottom, the Apple III Plaintiffs invited Judge Rogers to sign on to an analysis from a different case with the specific intent to argue on appeal that the analysis was erroneous. In doing so, the Apple III Plaintiffs sought improperly to skip over the district court to have us decide the Rule 19 issue in the first instance. They have thereby waived any challenge to the error they invited.

. The majority apparently believes these particular comments do not show that Judge *1057 Rogers was confused about why Plaintiffs were bringing these issues again after Judge Ware had already ruled on them (demonstrating a concern about claim and issue preclusion). The majority thinks they “could also be interpreted to mean that she had analyzed the issue and was inclined to issue the same ruling as Judge Ware.” With due respect, nothing in these statements can plausibly be construed as indicating that Judge Rogers had at this point deliberately analyzed the Rule 19 issue, and they certainly cannot be construed as her inclination to "issue the same ruling as Judge Ware.” Although our jurisdiction does not depend on what is said in the give-and-take between counsel and judge at an oral hearing, the transcript in this case, as will become apparent below, strongly suggests that Judge Rogers never in fact made an independent decision on the Rule 19 issue.