**Anthony C. DIMINNIE, Plaintiff,**

**v.**

**UNITED STATES of America, Daniel Patterson, Jack Calvert, David Edmisten, and Robert Rodemeyer, Defendants.**

**Civ. A. No. 78–71535.**

United States District Court,
E. D. Michigan, S. D.

Oct. 5, 1981.

Doherty & Thomas, P.C. by Philip J. Doherty, Royal Oak, Mich., for plaintiff.

James K. Robinson, U. S. Atty. by Michele Coleman Mayes, Asst. U. S. Atty., Detroit, Mich., for defendant U. S.

David Riebel, Columbus, Ohio, for defendant Patterson.

## OPINION

GILMORE, District Judge.

In this action, plaintiff seeks damages from the United States and Daniel Patterson because of a wrongful arrest, trial and conviction.[1] The matter is before the Court upon plaintiff's motion for leave to file amended pleadings, defendant Patterson's motion for judgment on the pleadings, defendant Patterson's motion for summary judgment, defendant United States' motion for judgment on the pleadings, or, in the alternative, summary judgment, and plaintiff's motion for summary judgment on the issue of liability alone.

Between February 6, 1973 and February 9, 1973, the Detroit office of the Federal

---

1. On August 11, 1980, defendants David Edmisten and Robert Rodemeyer were dropped from the action by stipulation. On November 7, 1980, plaintiff also conceded he had no claim against Mr. Calvert. Therefore the only remaining defendants are United States of America and Daniel Patterson.

Bureau of Alcohol, Tobacco and Firearms (A.T.F.) received two extortion letters and two phone calls threatening to blow up Federal Buildings and/or aircraft at Metropolitan Airport unless $1,000,000 was paid. The extortion letters were typewritten and the envelopes were handwritten. The A.T.F. and the F.B.I. launched an investigation which focused on plaintiff Anthony Diminnie.

Pursuant to search warrants, A.T.F. agents seized two samples of Diminnie's handwriting, and a third sample was seized pursuant to a Federal Grand Jury's subpoena. Jack Calvert, a handwriting analyst, examined all the exemplars and concluded that Mr. Diminnie had addressed the envelopes containing the extortion letters. Based on these findings, Diminnie was indicted on two counts of violating 18 U.S.C. §§ 844(a), 844(j), 232(5), and 876. Diminnie was arrested on June 12, 1973, and arraigned on the charges in the indictment. He went to trial in United States District Court on May 4, 1974; the trial ended in a hung jury. A second trial commenced on or about March 27, 1975, and Diminnie was found guilty by a jury on April 4, 1975. Before Diminnie was sentenced, Defendant Patterson, a special agent with the A.T.F., confessed to having authored the letters.[2] An examination of Patterson's handwriting confirmed that he had authored the documents, and on July 14, 1975 Judge Churchill of this Court dismissed the indictment against Diminnie.

On June 15, 1977, Diminnie filed a claim with the A.T.F. pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. This claim was finally rejected by the A.T.F. on September 22, 1978. Plaintiff filed suit in this court on June 21, 1978. Plaintiff's first amended complaint was filed on March 8, 1979. Federal jurisdiction was based on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. Plaintiff also claimed he was deprived of his Fourth, Fifth, Sixth, and Eighth Amendment rights as a result of the actions of the defendants. The complaint alleged that each defendant was liable in tort for trespass, invasion of privacy, libel and slander, assault and battery, false imprisonment, abuse of process, malicious prosecution, interference with contract rights, intentional infliction of emotional distress, and negligence.

For reasons set forth below, the Court concludes that the motions for summary judgment of both defendant United States and defendant Patterson must be granted and the case dismissed.

I

The plaintiff has failed to state a cause of action against Patterson, because Patterson simply had nothing to do with the prosecution of the plaintiff, except to carry the extortion letters from Detroit to Lansing for examination. He did not participate in the arrest, trial, or investigation of plaintiff.

Nevertheless, plaintiff claims Patterson is liable because of his role as a perpetrator of the crime, coupled with his duty as a law enforcement officer. Plaintiff sets forth two theories upon which Patterson's liability could rest. First, he alleges that Patterson, by committing the crime, was the proximate cause of plaintiff's prosecution. Second, he argues that Patterson's duty as a law enforcement officer with the A.T.F. required him to arrest either himself or his accomplice for the extortion attempt.

The claims asserted by plaintiff bear closest analogy to the tort of malicious prosecution. To maintain a successful malicious prosecution claim, a plaintiff must prove four elements: 1) the institution or continuation of judicial proceedings by or at the instance of the defendant; 2) a termination of the proceedings in plaintiff's favor; 3) malice on the part of the defendant; and 4) lack of probable cause. *Rivers v. Ex-Cell-O-Corp.*, 100 Mich.App. 824, 300 N.W.2d 420 (1980); Prosser, *Law of Torts*

---

**2.** Mr. Patterson had been arrested on May 2, 1974 for Federal drug offenses. He played a minor role in the A.T.F.'s investigation of Mr. Diminnie, having transported the extortion letters to the Michigan State Police Crime Lab in East Lansing for analysis.

835 (4th ed. 1971). In general, a defendant is not liable for malicious prosecution unless he takes some affirmative action towards initiating judicial proceedings. Mere knowledge of the acts of another who causes the prosecution is not sufficient to sustain liability.

■ This case does not present a traditional malicious prosecution claim. The rule noted above is intended to protect citizens who innocently give information which leads to an official investigation and prosecution. Here defendant committed a crime knowing that an official investigation would likely result. It is difficult to ascertain any public policy which would protect Patterson's actions; thus, arguably, his actions can be viewed as the proximate cause of maliciously setting the legal process into motion.

■ However, the plaintiff in a malicious prosecution action must do more than show that the defendant was responsible for instigating the judicial proceedings. An action for malicious prosecution requires a showing that process was employed without probable cause. Under Michigan law, a conviction is conclusive proof of probable cause, unless procured by false or fraudulent means. This is true even if the conviction is later set aside. *Moore v. Michigan National Bank*, 368 Mich. 71, 117 N.W.2d 105 (1962). Here plaintiff was indicted, tried, and convicted for the extortion attempt. There is no claim that Patterson gave false testimony at the trial. In fact, Patterson did not participate in the trial in any way.

■ Nevertheless, plaintiff argues that Patterson's participation in the extortion attempt qualifies as the kind of fraud which would abrogate the finding of probable cause. However, this is not the type of unlawful procurement of a verdict that will support a malicious prosecution claim. Clearly there was probable cause for the prosecution. Regardless of whether Patterson's actions as the perpetrator of the crime are viewed as "instituting" or "instigating" the criminal proceedings, plaintiff has failed to prove the necessary elements of a malicious prosecution action.

■ Plaintiff's second theory raises some troublesome questions. He argues that Patterson is liable for plaintiff's prosecution because he breached his duty as a law enforcement officer by failing to arrest himself or his accomplice for the extortion attempt. In effect, plaintiff is arguing that Patterson had a duty to come forward and admit his guilt or face civil tort liability. To create such a duty would necessarily impact on Patterson's Fifth Amendment right against self-incrimination.

The Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–94, 12 L.Ed.2d 653, 659 (1964). The issue in this case is whether the imposition of tort liability operates as a form of compulsion which abridges the defendant's right to remain silent. In *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), the Supreme Court held that a " 'penalty' is not restricted to fine or imprisonment. It means . . . the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly'." 385 U.S. at 515. Here defendant would be required to surrender his privilege against self-incrimination to prevent a tort action. Certainly this is as costly a sanction as a threat of disbarment, which was at issue in *Spevack v. Klein, supra.*[3] Nor is the certainty of tort

---

**3.** In *United States v. White*, 589 F.2d 1283 (5th Cir. 1979), the Fifth Circuit held that being "forced to go to trial in a civil case while criminal charges arising out of the same conduct were pending" did not force defendant to choose between preserving his right against self-incrimination and losing a civil suit. The court noted that the defendant "was not forced to surrender his privilege against self-incrimination in order to prevent a judgment against him; although he may have been denied his most effective defense by remaining silent, there is no indication that invocation of the fifth amendment would have necessarily resulted in an adverse judgment." 589 F.2d at 1286. Although the situation is somewhat similar

liability any less a sanction than the threat of cancellation of public contracts. *See Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). Thus, Patterson had no duty to speak.

 Patterson was the wrongdoer and Diminnie was the wronged person. No one can morally justify Patterson's actions in letting an innocent person be tried and convicted, but the fact that he chose to exercise his Constitutional right to remain silent until after the conviction of Diminnie does not give rise to a cause of action against Patterson. No balance of moral positions, justice, and policy can require Patterson to surrender his Fifth Amendment right under threat of civil tort liability, for the creation of a tort duty would necessarily require the surrender of his Fifth Amendment privilege against self-incrimination.[4]

It is therefore clear that a summary judgment of no cause of action must be entered on behalf of defendant Patterson.

## II

Plaintiff's claims against defendant United States are based on the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. The First Amended Complaint contains the following allegations: Count I: deprivation of Constitutional rights embodied in the 4th, 5th, 6th, and 8th Amendments, negligence in the investigation of plaintiff, and presentation of exaggerated or falsified evidence; Count II: illegal search and entry, trespass, and invasion of privacy; Count III: libel and slander; Count IV: assault and battery; Count V: false imprisonment; and Count VI: abuse of process and malicious prosecution.

 A claim based on the Federal Tort Claims Act is barred if it falls within the provisions of 28 U.S.C. § 2680(h), which states:

"The provisions of this chapter and section 1346(b) of this title [28 U.S.C. 1346(b)] shall not apply to—

\* \* \* \* \* \*

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso [March 16, 1974], out of assault, battery, false imprisonment, false arrest, abuse of process, *or malicious prosecution*. For the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." (emphasis in original).

Clearly, plaintiff's claims of libel, slander, and interference with contract rights are conclusively barred by § 2680(h). Further, the claims for assault, battery, false imprisonment, false arrest, and malicious prosecution are barred *unless* they arose on or after March 16, 1974. These claims arise out of the original arrest and indictment which occurred on or about June 12, 1973. Thus, the claims are barred by § 2680(h). *See Ames v. United States*, 600 F.2d 183 (8th Cir. 1979). Even though plaintiff's second trial occurred after March 16, 1974, defendant is insulated from any malicious prosecution claim arising out of this trial because

---

here, the likelihood of an adverse tort judgment is much more certain. Here, the plaintiff is arguing that tort liability flows directly from defendant's failure to speak.

**4.** In making this determination, this Court is aware of the decision in *Seidel v. Greenburg*, 108 N.J.Super. 248, 260 A.2d 863, 40 A.L.R.3d 987 (1969). In that case, stockholders of a corporation who conspired with others to have the corporation's lumber yard burned were liable in an action for malicious prosecution where the plaintiff (credit manager and bookkeeper of the corporation) was subjected to criminal prosecution for the fire. However, *Seidel* is factually distinguishable; the defendants failed to come forward *even after their own convictions*. The Fifth Amendment privilege was not applicable in *Seidel*.

of the grand jury indictment and subsequent jury verdict of guilty. (See discussion in Part I, *supra*.)

▮ Plaintiff's constitutional claims in Count II must also be dismissed. The United States is not liable for constitutional torts under the Federal Tort Claims Act. *See Birnbaum v. United States*, 588 F.2d 319 (2d Cir. 1978); *Liuzzo v. United States*, 508 F.Supp. 923 (E.D.Mich.1981).

▮ The remaining claims, trespass, invasion of privacy, negligence in the investigation, and negligence in the presentation of falsified evidence, are time barred under 28 U.S.C. § 2401(b), which states:

> "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues, or unless action is begun within six months after the date of mailing by certified or registered mail of notice of final denial of the claim by the agency to which it was presented."

Plaintiff's administrative claim was filed on June 15, 1977. Thus, the claims are barred if they accrued *before* June 15, 1975. A claim accrues for purposes of § 2401(b) when the plaintiff is in possession of the critical facts that he has been hurt, and who has inflicted the injury. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Plaintiff's trespass and invasion of privacy claims accrued when the Federal agents entered plaintiff's residence on June 12, 1973. The claim for negligence in the investigation of the extortion demands is based on actions that took place before the grand jury indicted plaintiff on June 6, 1973. Finally, the presentation of evidence could not have occurred later than the last day of the trial, April 4, 1975. Therefore, the claims are time barred.

For the reasons given, the motions for summary judgment of dismissal as against both defendant Patterson and defendant The United States of America will be granted.