Anthony C. DIMINNIE,
Plaintiff-Appellant,

v.

UNITED STATES of America and Daniel Patterson, Defendants-Appellees.

No. 81–1713.

United States Court of Appeals,
Sixth Circuit.

Argued March 17, 1983.
Decided Feb. 20, 1984.

Philip J. Doherty, James Thomas argued, Doherty & Thomas, Detroit, Mich., for plaintiff-appellant.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., Michele Coleman Mayes, Ronald Rice, argued, Asst. U.S. Attys., Maybaugh, Wellman & Monnich, Troy, Mich., David Riebel, argued, Columbus, Ohio, for defendants-appellees.

Before ENGEL and KRUPANSKY, Circuit Judges, and ALDRICH, District Judge.*

PER CURIAM.

Anthony Diminnie appeals from a summary judgment in favor of defendants Daniel Patterson and the United States in this action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680 (1976), asserting a wide variety of claims arising from Diminnie's arrest, trial and conviction. He also appeals the district court's denial of his motion to file a second amended complaint.

Diminnie was indicted for attempted extortion after the Detroit office of the Federal Bureau of Alcohol, Tobacco and Firearms ("A.T.F.") received two anonymous extortion letters containing threats to blow up government buildings, aircraft at Detroit Metropolitan Airport, and private residences. After his first trial resulted in a hung jury, he was tried a second time and convicted. However, before Diminnie was sentenced, Daniel Patterson, an agent of the A.T.F. who had been arrested in connection with illegal drug traffic, confessed that he was in fact the originator of the two

---

* Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

extortion letters. After Patterson's confession was corroborated by an examination of his handwriting, the criminal proceedings against Diminnie were fully dismissed. Diminnie filed an administrative claim with the A.T.F. on June 15, 1977 and a suit in U.S. District Court on June 21, 1978.

District Judge Horace Gilmore dismissed Diminnie's claims against the United States on the grounds that some of the claims were exempted from FTCA coverage while others were barred by the applicable statute of limitations. With respect to the claims against Patterson, Judge Gilmore found Diminnie had not stated a cause of action for malicious prosecution, the most nearly analogous tort action. He also rejected Diminnie's theory of tort liability premised upon a breach of Patterson's alleged duty, as a law enforcement officer, to admit his illicit activities, since imposing such a duty would abridge Patterson's Fifth Amendment right against self-incrimination. The facts and positions of the parties are recited in greater detail in the district court's reported opinion. *Diminnie v. United States,* 522 F.Supp. 1192 (E.D.Mich.1981).

## I.

We agree with the district court's conclusion that Diminnie cannot maintain a cause of action against the United States under the FTCA. First, the trial judge held that Diminnie's claims of libel, slander, and interference with contract rights were conclusively barred by 28 U.S.C. § 2680(h), which expressly excludes such claims from the statute's waiver of sovereign immunity. 522 F.Supp. at 1196. Second, the court held that Diminnie's claims for assault, battery, false imprisonment, false arrest, and malicious prosecution were barred by the doctrine of sovereign immunity. Its ruling was based on the fact that these claims all accrued at the time of the original arrest and indictment in 1973, and thus prior to the 1974 amendment to the FTCA which specifically waived sovereign immunity as to those types of claims.[1] *Id.* Third, the

court held that the remaining claims of trespass, invasion of privacy, negligence in the investigation of the crime, and negligence in the presentation of falsified evidence were time-barred. It stated that once a plaintiff knows "that he has been hurt, and who has inflicted the injury," his claim has accrued for purposes of the two-year limitation of 28 U.S.C. § 2401(b) (1976). Here, even in the case of the falsified evidence claim, the one which accrued last, both of these "critical facts" were in Diminnie's possession no later than April 4, 1975, the final day of his criminal trial. It follows that all of his claims accrued more than two years before he filed his administrative claim with the A.T.F. 522 F.Supp. at 1197.

The main thrust of Diminnie's argument on appeal is that the district court misinterpreted *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), in ruling that those causes of action that Diminnie otherwise properly asserted had accrued more than two years before he filed his administrative claim and thus were time-barred under the statute. In *Kubrick,* the Supreme Court held that a medical malpractice claim under the FTCA accrues at the time the plaintiff's injury manifests itself, *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), and not at some later date when the plaintiff first comes to believe that his injury may have been caused by a breach of a legal duty. Diminnie asserts that a proper construction of *Kubrick* requires the holding that Diminnie's cause of action did not accrue until the date when he first learned the identity of the culprit, Patterson. According to Diminnie, this date was June 27, 1975, when the Assistant United States Attorney announced to the court on the record that new handwriting exemplars from Patterson had confirmed the latter's earlier confession to the crime, thus leading to the dismissal of the criminal proceedings against Diminnie. Were Diminnie's reading of *Kubrick* correct, the filing of his administrative claim

---

1. The amendment by its own terms applies only to claims arising on or after its date of enactment, March 16, 1974, 28 U.S.C. § 2680(h).

would thus have been timely and so would his subsequent suit in federal court.

In support of his position, Diminnie relies upon the following language in *Kubrick:*

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

444 U.S. at 122, 100 S.Ct. at 359. This language was also relied upon by the trial judge in this case, 522 F.Supp. at 1197, by the United States District Court for the Eastern District of Michigan in *Liuzzo v. United States,* 485 F.Supp. 1274, 1281–84 (E.D.Mich.1980), and by the United States District Court for the Western District of Michigan in *Bergman v. United States,* 551 F.Supp. 407, 420–22 (W.D.Mich.1982),[2] as authority for the proposition that any cause of action under the FTCA accrues only after the plaintiff (a) knows of his or her actual injury and also (b) knows the actual identity of the individual committing the tort.

In an extensive opinion the trial judge in *Liuzzo* observed:

> In *Kubrick,* the Court had before it a case in which the plaintiff necessarily knew who caused his injury as soon as he learned what caused his injury. The cause of plaintiff's deafness in *Kubrick* was the treatment of his infection with neomycin, and there was no question regarding who administered the drug. Thus, the Court was not directly faced with the question of whether a plaintiff's ignorance of the identity of the person who caused the injury postpones the accrual of his cause of action. Nonetheless, the language and rationale of *Kubrick* indicate that ignorance of the "who" element of causation should, like ignorance of the "what" element of causation, postpone accrual of a cause of action, at least in certain circumstances.

*Liuzzo,* 485 F.Supp. at 1281. While the foregoing construction is not unreasonable, given the cited language from *Kubrick* itself, it is also important to note that *Kubrick* did not flatly state that accrual of a cause of action is always deferred until such time as the plaintiff is aware of the identity of the particular individual who may have caused his injury. As pointed out in *Liuzzo,* the plaintiff in *Kubrick* knew the identity of the particular doctor responsible for his injury, and therefore knowledge of identity was not an issue. Indeed, the Court makes no further reference to "who has inflicted the injury" in the more dispositive portions of *Kubrick.*[3]

---

**2.** Neither *Liuzzo* nor *Bergman* has to our knowledge been subject to appeal in this circuit. In *Liuzzo,* after a trial upon the merits, the district judge dismissed the claim upon a showing that the evidence failed to prove that the government informant acted in concert with the killers. *Liuzzo v. United States,* 565 F.Supp. 640 (E.D.Mich.1983). *Bergman* is apparently still in litigation. *See Bergman v. United States,* 565 F.Supp. 1353 (W.D.Mich. 1983).

**3.** For example, the syllabus provides in part that:

> *Held:* A claim accrues within the meaning of § 2401(b) when the plaintiff knows both the existence and the cause of his injury, and not at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice.

444 U.S. at 111, 100 S.Ct. at 353. In the body of the Court's opinion, Justice White characterizes the issue as "whether the claim 'accrues' within the meaning of the Act when the plaintiff knows both the existence and the cause of his injury or at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice." *Id.* at 113, 100 S.Ct. at 354. Later in the opinion, Justice White emphasizes that "[i]t is undisputed in this case that in January 1969 Kubrick was aware of his injury and its probable cause." *Id.* at 118, 100 S.Ct. at 357.

We are unable to accord *Kubrick* the expansive interpretation urged upon us by the plaintiff. We do concede that there is a difference, as Justice White observes, between "a plaintiff's ignorance of his legal rights and his ignorance of his injury or its cause" and that the prospect for bringing suit is "not so bleak for a plaintiff in possession of the critical facts that he has been hurt and *who* has inflicted the injury" as it is for a plaintiff without such knowledge. 444 U.S. at 122, 100 S.Ct. at 359 (emphasis added). However, we are not convinced that the quoted dicta from *Kubrick* was intended to discourage courts from applying, in appropriate cases, the traditional rule that the plaintiff must show fraudulent concealment of the critical facts before accrual will be postponed.

In *Barrett v. United States,* 689 F.2d 324 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983), the Second Circuit stated that the diligence-discovery rule, which postpones accrual "until the plaintiff has or with reasonable diligence should have discovered the critical facts,"

> has been applied where a plaintiff demonstrates that his injury was inherently unknowable at the time he was injured, *Quinton v. United States,* 304 F.2d 234 (5th Cir.1962), and where the Government conceals its negligent acts so that the plaintiff is unaware of their existence, *Peck v. United States,* 470 F.Supp. 1003, 1018 (S.D.N.Y.1979). In regard to the latter situation, "[r]ead into every federal statute of limitations . . . is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered the basis of the lawsuit." *Fitzgerald v. Seamans,* 553 F.2d 220, 228 (D.C.Cir.1977).

689 F.2d at 327. The court went on to stress those facts which indicated that the United States Government had actively engaged in the cover-up of the cause of action.

We agree that the doctrine of concealment involves a matter of fraud or constructive fraud on the part of the party sought to be held responsible, for it makes little sense to impose the responsibility for delay upon a party innocent of causing it. Indeed, the language in *Barrett* is consistent with the rules in our circuit with respect to the equitable tolling of causes of action whose time has already commenced to run. *See, e.g., Ott v. Midland-Ross Corp.,* 600 F.2d 24, 31–34 (6th Cir.1979); *Campbell v. Upjohn Co.,* 676 F.2d 1122, 1127–28 (6th Cir.1982). Therefore, we hold that before the accrual of a cause of action against the United States under the FTCA may be deferred because of the plaintiff's inability to identify the party whose conduct triggered the injury, it must be shown that the United States itself played a wrongful role in concealing the culprit's identity.

Our holding does not require us to conclude that the result in either *Liuzzo* or *Bergman* was in error, for it was alleged in both *Liuzzo* and *Bergman* that the United States Government was involved in the concealment of the identity of the individual whose conduct triggered the injury. We realize that there is some language in *Liuzzo,* and also in *Bergman* and *Barrett,* from which it might be argued that the court's inquiry should be directed not so much to the presence of fault on the part of the defendant, but to the absence of fault on the part of the injured party. Though this argument may be appealing, we conclude that it is not consistent with traditional case law. We further note that nearly every plaintiff is capable of asserting a seemingly persuasive excuse for ignoring the plain command of the statute of limitations. As Justice White observed in *Kubrick:*

> It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable. We should give them effect in accordance

with what we can ascertain the legislative intent to have been. We doubt that here we have misconceived the intent of Congress when § 2401(b) was first adopted or when it was amended to extend the limitations period to two years. But if we have, or even if we have not but Congress desires a different result, it may exercise its prerogative to amend the statute so as to effect its legislative will.

444 U.S. at 125, 100 S.Ct. at 360.

■ We are satisfied that the concealment issue is accurately analyzed in the traditional terms of *fraudulent* concealment of the identity of the tortfeasor. So viewed, it is plain that no such conduct is chargeable to the United States and that any such conduct on Patterson's part may not be imputed to the United States in this case, as it occurred outside the course of Patterson's employment. Therefore, to the extent that the FTCA did in fact waive the sovereign immunity of the United States with respect to certain of Diminnie's claims, those claims are barred by the Act's two-year statute of limitations.

## II.

■ The sole pleaded jurisdictional predicate for Diminnie's suit against Patterson, according to the first amended complaint, is that provided in the FTCA. While a claim against a federal employee based on an independent ground of jurisdiction may be joined with a claim against the United States under the FTCA, the Act itself does not provide for an independent cause of action against federal employees once the claim against the United States fails. *E.g., Morris v. United States,* 521 F.2d 872, 874–75 (9th Cir.1975); *Myers & Myers, Inc., v. United States Postal Service,* 527 F.2d 1252, 1256 (2d Cir.1975); *Williams v. United States,* 405 F.2d 951, 954–55 (9th Cir.1969). Diminnie does not dispute the validity of this rule. He contends, however, that diversity jurisdiction exists for his ancillary claims against Patterson and that the district court erred in refusing to allow him to amend his pleadings to assert this fact.

The second amended complaint, tendered with an appropriate notice to amend, was filed October 9, 1980. While Diminnie argues that the complaint seeks to set forth a cause of action subject to the diversity jurisdiction of the court, the pleading does not contain "a short and plain statement of the grounds upon which [such] jurisdiction depends." Fed.R.Civ.P. 8(a). Rather it merely mentions in paragraph 2 that the plaintiff "resided" in Inkster, Michigan and that defendant Patterson is a "resident" of Ohio.

We are not unmindful of the mandate of Fed.R.Civ.P. 15(a) that amendment of pleadings upon leave of court, although addressed to the discretion of the court, is nonetheless to be "freely given when justice so requires." Likewise, we are aware that the Supreme Court in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), intends that mandate to be heeded. If the tendered second amended complaint had only been technically deficient in its jurisdictional allegations, we do not believe that the trial judge would have denied the motion to amend on that account, nor is it likely that we would have sustained such a holding. It is clear, however, from the trial judge's opinion that his denial was prompted by his considered conclusion that Diminnie had failed to state a cause of action under Michigan law. 522 F.Supp. at 1194–95.

■ We agree with Judge Gilmore's analysis of Michigan law. Before his appointment to the federal judiciary, Judge Gilmore saw lengthy service as a state trial judge in Michigan. Not only is Judge Gilmore's analysis of Michigan law persuasive in itself, but it is entitled to that "considerable weight" which is accorded to the opinions of federal district judges on matters of state law within their own states. *Lenoir v. Porters Creek Watershed District,* 586 F.2d 1081, 1093 (6th Cir.1978); *Martin v. University of Louisville,* 541 F.2d 1171, 1176 n. 7 (6th Cir.1976); *Filley v. Kickoff Publishing Co.,* 454 F.2d 1288, 1291 (6th Cir. 1972).

■ Finally, we agree with the trial judge's reasoning based upon *Lefkowitz v.*

*Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), that Patterson's tort liability may not be based upon a legal duty to confess his crime. Such a duty, and liability for the breach thereof, cannot be imposed on Patterson, because it would subject him to a costly sanction for exercising his constitutional right to remain silent.

Affirmed.