874 F.2d 1097
 13 Fed.R.Serv.3d 1369
 Steven LUNDBLAD, Plaintiff-Cross-Appellant, Appellee,
v.
Richard D. CELESTE, Governor of Ohio; Dorothy Shoemaker,
Executor of the Estate of Myrl Shoemaker, formerly Director
of Ohio Department of Natural Resources; William Napier,
Deputy Director of Ohio Department of Natural Resources;
Donald Olson, Division Chief of Ohio Department of Natural
Resources; Ronald James, Deputy Director of Ohio Department
of Natural Resources, Defendants-Appellants, Cross-Appellees,
and
Ohio Department of Natural Resources, Defendant.
 Nos. 87-3651, 87-3689.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 5, 1987.
Decided May 4, 1989.
 
 Terrence M. Fay (argued), Asst. Atty. Gen., Environmental Enforcement Sec. Columbus, Ohio, for appellants.
 Jeffrey Decile (argued), James Ayers' Law Office, Columbus, Ohio, for appellees.
 Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiff Steven Lundblad filed two actions pursuant to 42 U.S.C. Sec. 1983 against the Ohio Department of Natural Resources ("ODNR") and various Ohio state officials in their individual capacities. The defendants moved to dismiss Lundblad's actions, now consolidated, pursuant to Fed.R.Civ.P. 12(b)(6). The district court denied the motions of all the defendants except that of Ronald James, holding that Lundblad stated a claim under the due process clause of the fourteenth amendment, the first amendment, and the equal protection clause of the fourteenth amendment of the United States Constitution. In granting James' motion to dismiss, the district court held that Lundblad's action against him was barred by the statute of limitations. Defendants now appeal the district court's order denying their motion to dismiss and Lundblad cross-appeals the district court's dismissal of his action against James. Lundblad also cross-appeals the district court's order imposing sanctions against both plaintiffs and defendants pursuant to Fed.R.Civ.P. 11. We affirm the district court's order denying defendant's motion to dismiss insofar as it held that Lundblad stated a cause of action under the equal protection clause of the fourteenth amendment. We reverse, however, the district court's order insofar as it held that Lundblad stated a claim under the first amendment and the due process clause of the fourteenth amendment. We affirm the district court's dismissal of Lundblad's claim against James. Finally, we decline to address the Rule 11 sanctions issue as it is not properly before the court.
 
 I.
 A.
 
 2
 In May of 1983, Lundblad filed suit against four of the current defendants, Ohio Governor Richard Celeste, Myrl Shoemaker, Lieutenant Governor of Ohio and Director of ODNR,[1] William Napier, Deputy Director of ODNR, and Donald Olson, Division Chief of ODNR, and ODNR itself. Plaintiff brought his claim under 42 U.S.C. Sec. 1983, alleging that defendants violated his constitutional rights under the due process clause of the fourteenth amendment, the first amendment, and the equal protection clause of the fourteenth amendment by refusing to accept his bid for a contract to operate a golf course located in a state park. On April 14, 1986, a month short of three years after filing his original action, Lundblad filed a complaint against defendant James, Deputy Director of Resource Management for ODNR, alleging that James had been an active participant with the other defendants in the denial of Lundblad's constitutional rights. On July 5, 1983, ODNR and the other individual defendants in the original action moved for summary judgment on the ground that Lundblad's claims against all of the defendants were barred by the doctrine of res judicata as the result of a judgment rendered by an Ohio Common Pleas Court on April 20, 1983. ODNR also moved that Lundblad's claim against it be dismissed on eleventh amendment grounds. On June 25, 1984, the district court held that the individual defendants had valid res judicata defenses and ODNR was protected by the eleventh amendment from an award of monetary damages. Lundblad appealed. On August 22, 1985, this court decided that the defendants' res judicata defense was not valid, reversed the decision of the district court with respect to the individual defendants and remanded the case back to the district court for further proceedings. 772 F.2d 907 (6th Cir.1985). Plaintiff did not appeal the dismissal of ODNR on eleventh amendment grounds, so ODNR is no longer a party to this action.
 
 
 3
 Thereafter, defendants renewed their motion to dismiss on the ground that, as state government officials, they were entitled to qualified immunity from civil damages. Meanwhile, plaintiff had filed his complaint against defendant James and on June 11, 1986, the district court granted a motion to consolidate the action against James with the original action against the other defendants. Defendant James, in addition to joining in the motion of the other defendants to dismiss on immunity grounds, also asserted that Lundblad's complaint against him was barred by the statute of limitations. The district court denied the defendants' motion and held that Lundblad had stated valid claims under 42 U.S.C. Sec. 1983 pursuant to the due process clause of the fourteenth amendment, the first amendment, and the equal protection clause of the fourteenth amendment. However, the court granted the motion to dismiss with respect to defendant James and held that plaintiff's claims against him were barred by the statute of limitations. The defendants, with the exception of defendant James, now appeal the district court's denial of their claim of qualified immunity.[2] Lundblad has filed a cross-appeal of the district court's dismissal of defendant James and of an earlier district court order granting sanctions against his counsel.
 
 B.
 
 4
 Because this case comes before this court on a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the court must accept as true, for purposes of this appeal, all of Lundblad's well-pleaded allegations. Ana Leon T.V. Federal Reserve Bank of Chicago, 823 F.2d 928, 930 (6th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). Lundblad alleged that he operated the golf concession at Punderson State Park in Geauga County, Ohio from 1973 to 1982. Under Ohio state law, ODNR is permitted to operate public service facilities such as golf courses located in state parks with its own employees or by entering into contracts or leases for the operation of such facilities by private parties. O.R.C. Secs. 1501.07, 1501.09 (Supp.1987). Although Lundblad had done an excellent job during his nine years as operator of the golf course, ODNR decided to invite bids for a contract to operate the golf course during the 1983 season. ODNR thereafter sent an "Instruction to Bidders" ("ITB") to prospective bidders, including Lundblad. ODNR received four bids on the contract.
 
 
 5
 Lundblad alleged that internal ODNR evaluations reached the conclusion that the bid submitted by plaintiff was the best bid received. Nevertheless, on April 1, 1983, ODNR announced that it had accepted the bid submitted by Robert Grant. Plaintiff alleged that defendant Shoemaker, as Director of ODNR, awarded the contract to Grant solely on the ground that Lundblad was not a Democrat. He further alleged that the decision not to grant the contract to Lundblad was part of a broader conspiracy involving all of the defendants to award contracts only to Democrats and to completely exclude all bidders who are not Democrats.
 
 
 6
 On April 3, 1983, Lundblad filed suit in the Court of Common Pleas of Franklin County, Ohio for injunctive relief against the award of the contract to anyone but himself. He obtained a temporary restraining order from that court enjoining the award of the contract to Grant. On April 16, 1983, before the state court had a chance to examine Lundblad's claims on the merits, Robert Grant wrote a letter to defendant Shoemaker withdrawing his bid and requesting the return of his bid bond. On April 18, 1983, defendant Shoemaker accepted Grant's withdrawal and returned to Grant his bid bond. Thereafter, defendant Shoemaker decided to reject all of the bids and to operate the golf course with ODNR employees pursuant to the statutory authority granted by O.R.C. Sec. 1501.09.
 
 II.
 
 7
 It is now firmly established that some government officials in the course of performing official duties are entitled to a qualified immunity from suit for civil damages. The Supreme Court set out the standard for applying this qualified immunity in Harlow v. Fitzgerald:
 
 
 8
 [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to know that the law forbade conduct not previously identified as unlawful.
 
 
 12
 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added).
 
 
 13
 Thus, under Harlow, Lundblad must allege facts which, if proven, "clearly establish" a violation of his constitutional rights.[3] Plaintiff has alleged violations of his constitutional rights under the due process clause of the fourteenth amendment, the first amendment, and the equal protection clause of the fourteenth amendment. Each of these must be examined in turn to determine whether they constitute allegations that defendants violated Lundblad's "clearly established" constitutional rights.
 
 A.
 Equal Protection
 
 14
 Lundblad argues, and the district court held, that defendants' alleged action constituted a violation of the equal protection clause of the fourteenth amendment thereby establishing a cause of action under Sec. 1983. The essence of this equal protection claim is that the incumbent Democratic administration of the State of Ohio had a rule against hiring Republicans, albeit informal and exercised in a capricious manner. In applying this rule, Lundblad contends, the administration discriminated against him by depriving him of the contract to run the golf course solely because he was a Republican.
 
 
 15
 The equal protection clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." It is in essence, "a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).
 
 
 16
 If, as Lundblad alleges, he was denied the contract solely on the basis that he was a Republican, he was not treated the same as those with whom he is similarly situated, i.e., otherwise qualified applicants who sought the contract to run the golf course. There is no rational basis for a rule which allows a state to contract with only Democrats or only Republicans. Indeed, this court and the Ohio Supreme Court have held that discrimination by a state or its agent for political reasons violates the equal protection clause. See Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir.1947) (discrimination, for political reasons, by a state or its agent in the revocation of a liquor license violates the equal protection clause of the fourteenth amendment); State ex rel. United District Heating, Inc. v. State Office Building Commission, 124 Ohio St. 413, 179 N.E. 138 (1931) (denial of public contract to lowest bidder on sole ground that bidder does not employ union labor violates equal protection clause).
 
 
 17
 Moreover, the state's argument, citing Palmer v. Thompson, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971), that no matter what the motives of the state officials, the state's decision to run the course itself resulted in no actual discrimination against Lundblad and hence no violation of equal protection, is not persuasive. First, as Lundblad asserts, that decision was nothing more than an indirect way of obtaining the same result--rendering plaintiff ineligible to operate the golf course because of his political party affiliation.
 
 
 18
 Second, the motive discussed in Palmer was that of legislative officials. The cases make a clear distinction between the motives of a legislative body and the motives of other actors. With respect to legislators, it has been said that a finding of unconstitutionality may not be grounded solely on the basis of motive. See Ely, Legislative and Administrative Motivation in Constitutional Law, 79 Yale L.J. 1505 (1970). This preclusion is justified by separation of powers principles and by the difficulty of determining the dominant motives underlying legislation, given the fact that many legislators with many different motives vote on a measure. Courts are not precluded, however, from inspecting the motives of nonlegislators. If courts were so precluded, wrongs such as racial and sexual discrimination in employment and in other areas could not be corrected. Indeed, motive and intent are the keystone of equal protection analysis. See Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (discriminatory intent required).
 
 
 19
 We hold, therefore, that Lundblad has stated a cause of action under Sec. 1983 for violation of his rights under the equal protection clause of the fourteenth amendment.
 
 B.
 First Amendment
 
 20
 Lundblad argues, and the district court held, that defendants' alleged actions in this case also violated Lundblad's first amendment free speech rights. Both plaintiff and the district court cited the Supreme Court's decisions in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Branti and Elrod both involved state employees who were dismissed from their jobs solely because of their political affiliation. In particular, the district court relied upon rather expansive language in the plurality opinion of Justice Brennan in Elrod to the effect that whenever the government treats a Democrat one way and a Republican another it has violated the first amendment. However, the concurring opinion of Justice Stewart, which provided the majority votes to the plurality, limited the Court's holding to the proposition that "a nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." Id. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring).[4] Thus, the question presented here is whether the Supreme Court's holdings in Branti and Elrod should be extended to cases where public officials refuse to grant public contracts to the lowest bidder solely on the ground of political affiliation.
 
 
 21
 In this case, it is not necessary to address this question directly because it was not "clearly established" in 1983 that Elrod and Branti extended to situations involving the letting of public contracts. Although the Sixth Circuit had not addressed the issue, two Eighth Circuit decisions prior to 1983 refused to apply Elrod and Branti to decisions to fire independent contractors. In Sweeney v. Bond, 669 F.2d 542, 545 (8th Cir.), cert. denied, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982), the court held that a politically motivated dismissal of Missouri Department of Revenue fee agents, whom the court found to be independent contractors, did not violate the first amendment. Similarly, the Eighth Circuit had held that the politically motivated dismissal of a public accounting firm from its position as city auditor did not contravene the first amendment because the accounting firm was an independent contractor. Fox & Co. v. Schoemehl, 671 F.2d 303, 305 (8th Cir.1982).
 
 
 22
 Given the fact that the only relevant case law existing in 1983 refused to extend the Elrod and Branti holdings to independent contractors, it cannot fairly be said that it was "clearly established" that the refusal of public officials to grant a public contract to the lowest bidder solely because of political affiliation violated Lundblad's first amendment rights. We emphasize that we do not reach the underlying issue of whether Elrod and Branti should be extended to situations involving independent contractors. We merely hold that no such extension was "clearly established" in 1983 and that defendants are, therefore, entitled to qualified immunity from civil damages for first amendment violations under Sec. 1983 as interpreted by Harlow.
 
 C.
 Procedural Due Process
 
 23
 The district court found that Lundblad had a property interest protected by the due process clause of the fourteenth amendment in having his bid evaluated in a fair, nonarbitrary fashion. The district court further found, however, that since Lundblad alleged that this property interest was deprived pursuant to an established policy rather than a random and unauthorized act, he need not plead the inadequacy of state post-deprivation remedies. See Spruytte v. Walters, 753 F.2d 498, 509 (6th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986) (quoting Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).
 
 
 24
 Assuming, without deciding, that Lundblad held a property interest in the fair and non-arbitrary evaluation of his bid, his procedural due process claim must fail because he has adequate post-deprivation remedies available under Ohio law. See Dayton ex rel. Scandrick v. McGee, 67 Ohio St.2d 356, 423 N.E.2d 1095 (1981) (permanent injunction prohibiting entry into contract with arbitrarily favored bidder); State ex rel. United District Heating, Inc. v. State Office Bldg. Comm., 124 Ohio St. 413, 179 N.E. 138 (1931), aff'd on rehearing, 125 Ohio St. 301, 181 N.E. 129 (1932) (writ of mandamus compelling award to lowest bidder). Plaintiff has no federal cause of action against defendants on procedural due process grounds because Ohio judicial remedies are perfectly adequate and provide all the process that is due.
 
 
 25
 Spruytte does not relieve Lundblad of the obligation to avail himself of these remedies. The "established state procedure" referred to in Hudson and in Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), has no application here. In Logan, the law did not allow any post-deprivation judicial remedy. Indeed, it was the remedy itself which was being challenged. That is not the case here. The scheme allegedly established in favor of the Democrats did not involve the Ohio courts. Indeed, there is no claim that the Ohio courts participated with the executive branch to refuse contracts to Republicans. Thus, the Ohio courts provide fair and nonarbitrary means of obtaining a remedy, and so provide due process. There is no showing that Ohio courts will deny Lundblad a remedy if he can prove his claim of discrimination based on party affiliation. Thus his procedural due process claim must fail.
 
 
 26
 We, therefore, hold that Lundblad has failed to state a cause of action under Sec. 1983 for violation of his rights under the due process clause of the fourteenth amendment.
 
 III.
 
 27
 Plaintiff filed a cross-appeal arguing that the district court erred in holding that plaintiff's claims against defendant James are barred by the statute of limitations. As an initial matter, defendants argue that this court does not have jurisdiction to hear plaintiff's cross-appeal because Fed.R.Civ.P. 54(b) requires that an order dismissing less than all of the parties may not be appealed on an interlocutory basis unless the district court makes an express determination that no just reason exists for delaying appeal. The district court made no such determination here. Nevertheless, defendants' jurisdictional arguments must be rejected because plaintiff's claim against James was originally a separate action from the claims against the other defendants. To borrow the language of Kraft, Inc. v. Local Union 327, 683 F.2d 131, 133 (6th Cir.1982), "[I]nasmuch as the consolidation of both actions below did not merge the suits into a single cause, it is beyond preadventure that the trial court's decision dismissing [James] and thereby terminating [Lundblad's] action is a final appealable order not requiring further certification pursuant to Fed.R.Civ.P. 54(b)."
 
 
 28
 Turning to the merits, in Mulligan v. Hazard, 777 F.2d 340 (6th Cir.1985), cert. denied, 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986), this court held that the one-year statute of limitations found in O.R.C. Sec. 2305.11 governs all Sec. 1983 actions arising in Ohio. Id. at 344. However, the Supreme Court's recent decision in Owens v. Okure, --- U.S. ----, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), effectively overruled our holding in Mulligan. In Owens, the Supreme Court concluded that when a state has both a statute of limitations for intentional torts and a statute of limitations for residual personal injuries, "courts considering Sec. 1983 claims should borrow the general or residual statute for personal injury actions." Id. at ----, 109 S.Ct. at 574. Thus, the correct limitation period for Sec. 1983 actions arising in Ohio is the two-year period found in O.R.C. Sec. 2305.10 which governs "action[s] for bodily injury or injuring personal property...."
 
 
 29
 This change does not help plaintiff because he did not file the claim against James until over three years after the cause of action accrued. Nevertheless, plaintiff argues that the statute should be tolled because he did not become aware of James' participation in the decision not to grant him the contract to run the golf course until February 1986, and that James, along with the other defendants, fraudulently concealed James' participation.
 
 
 30
 "In actions brought under section 1983, state tolling statutes apply where the most nearly analogous state statute of limitations is borrowed, to the extent that the tolling provisions are not inconsistent with the federal policy underlying section 1983." Jones v. Shankland, 800 F.2d 77, 80 (6th Cir.1986), cert. denied, 481 U.S. 1048, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987) (citing Board of Regents of the University of the State of New York v. Tomanio, 446 U.S. 478, 484-85, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980)). We must therefore examine plaintiff's argument that the statute was tolled under the guidelines of Ohio law.[5] Lundblad makes three arguments under Ohio law in support of tolling the statute of limitations on his claim against James. We take up each in turn.
 
 
 31
 First, he argues that failure to apply the toll in this case would violate his right to a remedy under Article I, Section 16 of the Ohio Constitution. Lundblad cites Hardy v. VerMeulen, 32 Ohio St.3d 45, 47, 512 N.E.2d 626, 629 (1987), cert. denied, --- U.S. ----, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988), for the proposition that a statute of limitations "as applied to bar the claims of medical malpractice plaintiffs who did not know or could not reasonably have known of their injuries, violates the right-to-a-remedy provision of Section 16, Article I of the Ohio Constitution." However, Hardy applies only where a prospective plaintiff is not aware or could not be aware of his injuries. It does not apply to cases where a prospective plaintiff is unaware that an additional defendant may exist for a known cause of action. There is no support in Ohio law for the proposition that a statute of limitations will be tolled until plaintiff learns the identity of a prospective defendant. In this case, Lundblad knew of the injury at the time of its occurrence, and the statute of limitations afforded him a reasonable time in which to enforce his claim. Lundblad's argument that Hardy tolled the statute of limitations therefore fails.
 
 
 32
 Second, Lundblad argues that application of the time limitation to this case would be retroactive and thus would violate his right to a remedy under the Ohio Constitution. Deskins v. Young, 26 Ohio St.3d 8, 496 N.E.2d 897 (1986). Lundblad reasons that the Supreme Court's decision in Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), overturned long-established law that federal courts were required to use the most analogous statute of limitations. Lundblad further argues that the most analogous statute of limitations at the time Wilson was decided was O.R.C. Sec. 2305.09(C) which provides for a four-year limitation period in cases seeking relief for fraud.
 
 
 33
 Plaintiff's argument must fail for two reasons. First, Deskins, like Hardy, involved a case where the injury, not the identity of a defendant, could not have been discovered prior to the running of the statute. The retroactive application of a shorter statute of limitations "is not unlawful as long as a prospective claimant is still afforded a reasonable time in which to enforce his right." Mominee v. Scherbarth, 28 Ohio St.3d 270, 278, 503 N.E.2d 717, 723 (1986) (quoting Baird v. Loeffler, 69 Ohio St.2d 533, 535, 433 N.E.2d 194, 196 (1982)). Second, and more importantly, this court has already expressly considered and rejected this argument. In Mulligan, the court held that "Wilson implicitly mandates that its holding be applied retroactively." 777 F.2d at 344. Although Mulligan no longer controls the question of which statute of limitations applies, it remains the law of the circuit with respect to the question of retroactivity.
 
 
 34
 Finally, Lundblad argues that the statute of limitations is tolled with respect to his claim against defendant James under the Ohio doctrine of fraudulent concealment. The facts of this case do not support a finding of fraudulent concealment because plaintiff has not alleged that defendant James personally took any fraudulent actions to conceal his involvement in the decision not to grant Lundblad the golf course contract. At most, plaintiff alleged that he was prevented from discovering defendant James' participation in the denial of his bid as a result of deceptive replies by ODNR to his discovery requests, the original defendants' securing of protective orders in both state and federal court, and the filing of a fraudulent affidavit by defendant Shoemaker's physician which prevented plaintiff from deposing him. None of these allegedly deceptive practices involved James.
 
 
 35
 We hold that the statute of limitations governing Lundblad's claim against James was not tolled and that, because Lundblad did not initiate any action on that claim during the two-year period, the district court was correct in dismissing it.
 
 IV.
 
 36
 Plaintiff also appeals the district court's order imposing Rule 11 sanctions on counsel for both plaintiff and defendants. We decline to address this question because the Rule 11 sanctions are in no way related to the issues of qualified immunity made appealable by Mitchell v. Forsyth, 472 U.S. at 530, 105 S.Ct. at 2817. See note 2 supra. The district court did not make "an express determination that there is no just reason for delay ...," Fed.R.Civ.P. 54(b). We therefore lack jurisdiction to review this question on an interlocutory appeal. The Ninth Circuit opinion in Unioil, Inc. v. E.F. Hutton & Co., Inc., 809 F.2d 548, 556 (9th Cir.1986), cited by the dissenting judge, might provide persuasive authority for a contrary ruling if the lawyer for Lundblad had in fact appealed as did the lawyer, Alioto, in Unioil. The lawyer here, however, has not filed a notice of appeal from the order imposing the Rule 11 sanctions, as did Alioto, and therefore the lawyer has no standing in our court to argue that the order imposing Rule 11 sanctions against him is final. Unioil does not hold--and our research does not disclose that any court has held--that an interlocutory appeal by a party becomes final because the party is appealing Rule 11 sanctions.
 
 V.
 
 37
 We conclude that Lundblad's equal protection claim is his only viable Sec. 1983 claim and that his claim against James is foreclosed. The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 38
 RYAN, Circuit Judge, concurring in part and dissenting in part:
 
 
 39
 Because my brother correctly resolves the questions presented by plaintiff's first amendment claim and his claim against defendant James, I join parts I, II-B, and III of the court's opinion. However, I must respectfully dissent from my brother's treatment of the plaintiff's equal protection claim, his procedural due process claim, and the trial court's imposition of sanctions against plaintiff's counsel.
 
 I.
 
 40
 The court concludes that plaintiff has stated a claim under 42 U.S.C. Sec. 1983 for violation of his rights under the equal protection clause of the fourteenth amendment because he has alleged that defendants denied him the golf course contract solely because he was not a Democrat. The court is not troubled by the defendants' subsequent decision to run the golf course themselves pursuant to O.R.C. Sec. 1501.29 (1986). Were we writing on a clean slate, I might agree with my brother's reasoning and conclusion. Unfortunately, however, the Supreme Court's decision in Palmer v. Thompson, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971) precludes that result.
 
 
 41
 In Palmer, plaintiffs brought an equal protection claim against the city of Jackson, Mississippi after city officials had closed the public swimming pool rather than desegregate it. The Court refused to find an equal protection violation because the decision treated blacks and whites identically: neither could use the pool. Id. at 220, 91 S.Ct. at 1942. In this case, defendants' decision similarly treats Democrats and Republicans identically: neither may operate the golf course.
 
 
 42
 My brother offers two reasons for ignoring Palmer. First, he argues that the decision of defendants to operate the golf course themselves "was nothing more than an indirect way of obtaining the same result--rendering plaintiff ineligible to operate the golf course because of his political affiliation." That may very well be so. But the decision at issue in Palmer was also unquestionably an indirect way of obtaining the same result--keeping blacks out of public pools in Jackson. Counsel for the city conceded at oral argument "that the desegregation ruling ... precipitated the city's decision to cease furnishing public swimming facilities to its citizens." Id. at 254, 91 S.Ct. at 1959 (White, J., dissenting). Thus, there is no distinction on this point between the case at bar and Palmer.
 
 
 43
 We are also told that this case is distinct from Palmer in that the decision there was taken by a legislative body whereas the decision at issue here was taken by executive officials. My brother cites no authority for the proposition that Palmer applies only to statutes and not executive actions, and I could find none. Instead, the court explains that the judiciary may not be precluded from inspecting the motives of non-legislators. This, of course, is true. But it does not change the fact that executive officials may not be held liable under the equal protection clause unless they actually discriminate against a protected group. Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), does not stand for the proposition that discriminatory intent, without discriminatory action, establishes a violation of the equal protection clause; rather, it holds that both are required. Id. at 239, 96 S.Ct. at 2047.
 
 
 44
 Defendants' actions in this case may very well have been designed to keep Republicans out of the state's golf course business. But these actions did treat Democrats and Republicans alike. While I sympathize with my brother's desire to preclude conduct of the sort alleged here, this court lacks the authority reach that conclusion. We must respect the Supreme Court's determination, right or wrong, in Palmer.
 
 II.
 
 45
 I also disagree with the court's conclusion that plaintiff does not state a claim for violation of his rights under the due process clause. The court holds that the availability of adequate post-deprivation remedies under Ohio law precludes plaintiff's due process claim. This reasoning ignores the well established principle that the requirement that a plaintiff seek post-deprivation remedies "is inapplicable when 'a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action.' " Spruytte v. Walters, 753 F.2d 498, 509 (6th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986) (quoting Hudson v. Palmer, 468 U.S. 517, 532, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984)) (emphasis added).
 
 
 46
 The court attempts to avoid Spruytte by pointing out that the law at issue in Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), a case upon which the Spruytte court relied, did not provide for a post-deprivation judicial remedy. This observation, while interesting, is completely irrelevant to the issue presented by this appeal. The fact remains that the Spruytte court squarely held that "the adequacy of state post-deprivation procedures is irrelevant" when plaintiff has alleged a violation of his rights pursuant to established state procedure. 753 F.2d at 510.
 
 
 47
 Because plaintiff did allege that defendants' actions were part of a broader scheme to ensure that only Democrats received state contracts, and because I agree with the district court's holding that Ohio law grants plaintiff a property interest in the fair and non-arbitrary evaluation of his bid, see Dayton ex rel. Scandrick v. McGee, 67 Ohio St.2d 356, 423 N.E.2d 1095 (1981); State ex rel. United District Heating, Inc. v. State Office Bldg. Commission, 124 Ohio St. 413, 179 N.E. 138 (1931), aff'd on reh., 125 Ohio St. 301, 181 N.E. 129 (1932), I would affirm the district court's denial of defendants' motion to dismiss plaintiff's procedural due process claim.
 
 III.
 
 48
 Finally, I must dissent from the court's refusal to consider the appeal of the district court's imposition of sanctions. My brother declines to reach the issue because it is not "related to the issues of qualified immunity made appealable by Mitchell v. Forsythe, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985)." I disagree with this holding, and would instead adopt the position taken by the Ninth Circuit:
 
 
 49
 An order imposing sanctions solely upon counsel, a non-party to the underlying action, is immediately appealable as a final order. Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1047 n. 1 (9th Cir.1985); Kordich v. Marine Clerks Association, 715 F.2d 1392, 1393 (9th Cir.1983).
 
 
 50
 Unioil, Inc. v. E.F. Hutton & Co., Inc., 809 F.2d 548, 556 (9th Cir.1986).
 
 
 51
 Under this rule, it does not matter whether the issues presented by the sanctions order relate to those of qualified immunity because the sanctions order is itself a final, appealable order under 28 U.S.C. Sec. 1295.
 
 IV.
 
 52
 For the reasons set forth above, I concur with parts I, II-B, and III of the court's opinion, and dissent from parts II-A, II-C, and IV.
 
 
 
 [1]
 After the death of Lieutenant Governor Shoemaker in 1985, the district court, upon motion by the plaintiff, substituted Dorothy Shoemaker, the late Lieutenant Governor's widow and the executrix of his estate, as a party to this action
 
 
 [2]
 Defendants filed their appeal pursuant to the Supreme Court's decision in Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), in which the court held that a "district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. Sec. 1291 notwithstanding the absence of a final judgment."
 
 
 [3]
 Lundblad argues that defendants may not raise the qualified immunity defense because it "is an affirmative defense that must be pleaded by a defendant official." Harlow, 457 U.S. at 815, 102 S.Ct. at 2737. Lundblad reasons that because defendants have not filed an answer and instead raise the qualified immunity defense on a motion to dismiss for failure to state a claim, defendants should be precluded from raising the defense prior to filing an answer. While Lundblad correctly states the rule, courts generally permit affirmative defenses to be asserted by motion. Wright & Miller, Federal Practice and Procedure Sec. 1277 (1969). The Sixth Circuit has adopted this view, and extended it to hold that "an affirmative defense is not waived, even though not specifically pleaded, where the defense clearly appears on the face of the pleading and is raised in a motion to dismiss." Pierce v. County of Oakland, 652 F.2d 671, 672 (6th Cir.1981)
 
 
 [4]
 "When a fragmented Court decides a case and no single rationale explaining the results enjoys the assent of five justices, 'the holding of the Court may viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....' " Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976)) (opinion of Stewart, Powell, and Stevens, JJ.)
 
 
 [5]
 The district court relied upon this court's decision in Silverberg v. Thomson McKinnon Securities, Inc., 787 F.2d 1079, 1082 (6th Cir.1986), to the effect that "federal law, not state law, governs such matters as accrual of causes of action and tolling." We need not resolve the apparent conflict between Jones and Silverberg because the statute of limitations governing Lundblad's claim against James was not tolled under either the federal or state tolling rules. Assuming federal rules apply, the district court correctly held that our decision in Diminnie v. United States, 728 F.2d 301 (6th Cir.), cert. denied, 469 U.S. 842, 105 S.Ct. 146, 83 L.Ed.2d 85 (1984), would preclude tolling in this case under federal law because James did not actively and personally participate in any fraud on Lundblad to conceal his role in the decision to deny plaintiff the golf course management contract